Michael A. McGill, SBN 231613
mmcgill@ferronelawgroup.com
Derek G. Thompson, SBN 350736
dthompson@ferronelawgroup.com
**FERRONE LAW GROUP**
4333 Park Terrace Drive, Suite 200
Westlake Village, CA  91361
Telephone:   (805) 373-5900
Facsimile:    (818) 874-1382

Attorneys for Plaintiffs
TRAVIS SWITZER and
MATTHEW CHIRCOP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRAVIS SWITZER and MATTHEW CHIRCOP,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SANTA MARIA; BRADLEY DANDRIDGE, individually and as Fire Chief of the City of Santa Maria; and DOES 1–10,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

**I.**

**NATURE OF ACTION**

Plaintiffs TRAVIS SWITZER and MATTHEW CHIRCOP bring this action, asserting claims under 42 U.S.C. § 1983 and California State law claims alleging the CITY

OF SANTA MARIA discriminated and retaliated against Plaintiffs for their protected speech activities as well as their protected political activities and associations. This lawsuit challenges the retaliatory discipline and termination imposed upon Plaintiffs for the engagement in protected First Amendment speech activities and their association with their union, Local 2020. Plaintiff SWITZER was terminated for no other reason other than his association with CHIRCOP, the president of his union and for the support he gave to his union Local 2020. CHIRCOP was similarly targeted for his political affiliations and conduct while performing his lawful duties as his union's president.

## II.
## JURISDICTION AND VENUE

1. This case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(3). The Court also has pendent jurisdiction over the state claims, and supplemental jurisdiction over all Defendants herein.

## III.
## PARTIES

5. Plaintiff TRAVIS SWITZER ("SWITZER") was at all relevant times a firefighter employed by Defendant CITY OF SANTA MARIA until his wrongful termination on or about January 9, 2025.

6. Plaintiff MATTHEW CHIRCOP ("CHIRCOP") is, and at all relevant times was, a Fire Captain employed by Defendant CITY OF SANTA MARIA and serves as the duly elected President of the Santa Maria Fire Fighters Local 2020. Local 2020 is the recognized bargaining unit by the CITY OF SANTA MARIA, who represents the sworn firefights who work on a daily basis to provide fire suppression and emergency services for its community. CHIRCOP was elected to represent the interest of Local 2020 and speak on behalf of Local 2020.

7. Defendant CITY OF SANTA MARIA ("CITY") is a municipal corporation, duly

organized and existing under the Constitution and laws of the State of California, and is situated within the County of Santa Barbara.

8. Defendant BRADLEY DANDRIDGE ("DANDRIDGE") is, and at all relevant times was, the Fire Chief for the CITY OF SANTA MARIA. At all times relevant to the allegations contained herein, Defendant DANDRIDGE was acting in his official capacity and within the course and scope of his employment and/or agency with the CITY.

9. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and proximately caused the injuries and damages to Plaintiffs as herein alleged. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained.

10. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, partner, joint venturer, or co-conspirator of each of the other Defendants, and in doing the things hereinafter alleged, was acting within the course, scope, and authority of such agency, employment, or other relationship, and with the consent, permission, and ratification of each of the other Defendants.

## IV.

## ADMINISTRATIVE PREREQUISITES

11. On or about April 1, 2025, each Plaintiff timely presented a written claim to Defendant CITY OF SANTA MARIA. Plaintiffs complied in all respects with the requirements of the Government Claims Act, California Government Code section 910 et seq.

12. Said claims were rejected by the CITY on May 14, 2025. Plaintiffs have therefore exhausted their administrative remedies and satisfied all conditions precedent to filing this lawsuit, which is timely filed thereafter.

13. Each Plaintiff filed an Unfair Labor Charge with the California Public Employment Relations Board. Plaintiff CHIRCOP filed his Unfair Labor Charge on July 7, 2024, and Plaintiff SWITZER filed his Unfair Labor Charge on June 27, 2025.

V.

**FACTUAL ALLEGATIONS**

13. In or around December 2023, and continuing throughout 2024, Defendant CITY and Santa Maria Fire Fighters Local 2020 ("Local 2020"), the union of which both Plaintiffs are members, were engaged in contentious negotiations for a successor memorandum of understanding ("MOU"). In support of the union's efforts to secure fair wages and working conditions, members of Local 2020, including Plaintiffs SWITZER and CHIRCOP, engaged in protected activities.

14. These activities included, but were not limited to, speaking at City Council meetings, door-to-door canvassing, and picketing. Much of the advocacy centered around the Fire Departments inability to secure adequate staffing to protect the citizens of the CITY, as Local 2020 was fighting for higher quality staffing as Fire Department turnover was extremely high. The staffing issue, which was due to the City's inability to attract high quality candidates due to subpar compensation, was leading to possible dangerous public safety outcomes for the residents of the City of Santa Maria

15. Plaintiffs' participation in these protected activities, and their vocal advocacy for the residents of Santa Maria and Fire Department personnel was well known to Defendants.

16. During this time Plaintiff CHIRCOP was the president of Local 2020 and was tasked with corresponding directly with CITY leadership and Defendant DANDRIDGE.

17. Defendant DANDRIDGE, the Fire Chief for the CITY's Fire Department, who consistently engaged in anti-union rhetoric and his animus towards Local 2020, has been a roadblock to much of the progress Plaintiff CHIRCOP and SWITZER were working towards for employees of the Fire Department. The express disdain from the

Defendants stemmed from Plaintiff's vocal advocacy for their union and public safety, and such animus was only aggravated by further public scrutiny over the failures the Defendant's had perpetuated with the Fire Department.

18. For example, in or around February of 2024, Chief DANDRIDGE showed Local 2020 members a picture of on an off-duty firefighter in front of City Hall which depicted the member holding a sign that read "Fair pay for Firefighters." Defendant DANDRIDGE expressed that Local 2020 members were engaging in political action and used the photo as threat of future discipline if members continued to hold signs in front of City Hall.

19. Further, on or about September 13, 2024, Defendant DANDRIDGE cornered a firefighter in an intimidating manner with the intent to get the firefighter to work for a different agency. Plaintiff CHIRCOP brought the matter to Defendant DANDRIDGE's attention stating that he is intimidating firefighters and is consistently expressing his disdain for Local 2020 at public events. Defendant DANDRIDGE then excoriated CHIRCOP and brought up the fact that Local 2020 continues to go in front of the CITY and states that fire personnel are overworked.

20. Defendant DANDRIDGE during promotional interviews often interrogates Local 2020 promotional candidates trying to get them to elicit "whose side" the member is on, either management or union. Defendant DANDRIDGE has made clear he has no intent to offer any opportunities for Fire Department employees who outwardly support Local 2020.

21. On January 28, 2025, during a labor management meeting Defendant DANDRIDGE stated that he would not utilize any policy that benefits Local 2020 or its members.

22. CHIRCOP and Local 2020 members were similarly on the receiving end of the City of Santa Maria City Councils ire. Members of the City Council have accused Local 2020 and their members of being liars. City Council's strained relationship with the Local 2020 became more tense after Local 2020 filed two unfair Labor Charges with the

1  Public Employment Relations Board in 2024.

2  23. On June 20, 2024, Plaintiff CHIRCOP, while on-duty as a Fire Captain, was scheduled to lead a routine public education presentation on the City's mutual-aid and Incident Command System (ICS) protocols, which was a standard topic for such community outreach. The presentation was delivered to the Democratic Club of Santa Maria Valley and was performed like the Fire Department would for any other community organization.

24. In accordance with Fire Department practice, Captain CHIRCOP attended the presentation with his assigned on-duty fire engine crew, which consisted of Engineer Matthew Luis and Plaintiff SWITZER, who was serving as the engine's firefighter. Nothing in the presentation was out of the ordinary, as it was a presentation which CHIRCOP performed routinely with many other community organizations.

25. Plaintiff SWITZER did not utter a single word during the event as he was merely present because he just happened to be the on-duty firefighter assigned to Captain CHIRCOP who was performing the public education event.

26. Thereafter, on July 4, 2024, Defendant DANDRIDGE summoned Plaintiff SWITZER to an interrogation regarding the June 20, 2024, public education event. SWITZER requested union representation but was denied any such representation.

27. On or about January 9, 2025, just three weeks before Plaintiff SWITZER was scheduled to complete his probationary period, Defendant DANDRIDGE summarily terminated SWITZER's employment with the Santa Maria Fire Department.

28. When terminating SWITZER, Defendant DANDRIDGE provided no specific cause or factual basis for the decision. Instead, DANDRIDGE stated there were "no accusations" against SWITZER, but that it was his "opinion" that SWITZER had not met the expectations of a Santa Maria firefighter. When asked specifically why SWITZER was being terminated, DANDRIDGE stated "I don't need to answer that."

29. On the same day, January 9, 2025, Plaintiff CHIRCOP was issued a notice of intent to discipline in the form of a suspension for two 24-hour shifts without pay. The

discipline notice CHIRCOP received cited the CITY's political activity policy for the reason in which CHIRCOP was being disciplined, despite it being clear that he nor his crew engaged in any on duty political activity on June 20, 2024. CHIRCOP was ultimately handed down a two 24-hour shift suspension without pay.

30.   Plaintiffs were subjected to adverse employment actions—including the suspension of CHIRCOP and the termination of SWITZER— for engaging in lawful and protected activities associated. The adverse employe actions were not based on any legitimate, non-retaliatory reason. Instead, these actions were taken in direct retaliation for Plaintiffs' actual and perceived political activities and associations, and to interfere with, intimidate, and chill their and other employees' exercise of rights protected under California and Federal law.

## VI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Against All Defendants
### Deprivation of First Amendment (Free Speech) Rights
### (42 U.S.C. § 1983)

31.   Plaintiffs hereby incorporate each and every preceding paragraph as though set forth here.

32.   Defendants have deliberately harassed, discriminated and retaliated against Plaintiffs by terminating Plaintiff SWITZER and suspending CHIRCOP without pay and without cause other than to retaliate against them for their protected activities.

33.   As a direct result of Plaintiffs exercise of their Constitutional rights to free speech and participating in labor, organizational, social and political activities, Defendants took the adverse actions against them. Absent said protected speech, Plaintiffs would not have suffered adverse employment actions, and would not have been injured.

34.   In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression and to petition the government. Specifically, Defendants

have taken the aforementioned action against Plaintiffs in direct retaliation for, and in response to their various protected activities, some of which have been described herein. There are of course additional activities which have not been included in this claim. The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law in their capacity as a municipality chartered under state law, and as policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

35. These allegations, as well as any reasonable inferences from them, must be taken as true, and, if they are taken as true, they clearly show that the adverse actions taken against Plaintiffs were taken by individuals whose actions represent official policy. Here, it is without dispute that Defendants possessed the requisite authority to implement the alleged adverse employment actions.

36. Plaintiffs have no speedy or adequate remedies to compel the relief sought herein; however, Plaintiffs filed Unfair Labor Charges with the California Public Employment Relations Board and a Claim for Damages with the CITY which has been rejected by Defendants.

37. It was, or should have, been plainly obvious to any reasonable policy making official of the CITY that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiffs' clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants, and each of them, violated the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to free expression, association and assembly. Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual defendants, according to proof.

38. Plaintiffs have no plain, speedy or adequate remedy at law to prevent future violations of their civil rights, and therefore seek extraordinary relief in the form of permanent injunctions, as hereafter described. Damages alone are inadequate and injunctive relief is sought.

## SUPPLEMENTAL CLAIMS

### SECOND CAUSE OF ACTION
Violation of California Labor Code §§ 1101 & 1102
**(Against Defendants CITY OF SANTA MARIA and DANDRIDGE)**

39. Plaintiffs hereby incorporate each and every preceding paragraph as though set forth here.

40. California Labor Code section 1101 prohibits employers from making, adopting, or enforcing any rule, regulation, or policy that forbids or prevents employees from engaging in politics or that controls or directs the political activities or affiliations of employees.

41. California Labor Code section 1102 prohibits employers from coercing or influencing, or attempting to coerce or influence, their employees by means of threat of discharge or loss of employment to adopt or follow, or refrain from adopting or following, any particular course or line of political action or political activity.

42. Defendants violated Labor Code section 1101 by adopting and/or enforcing rules and policies that, as applied to Plaintiffs, were used to control and direct their perceived political activities and affiliations, including their association with Local 2020 and its advocacy efforts.

43. Defendants violated Labor Code section 1102 by coercing and attempting to influence Plaintiffs' political activities through threats of discipline and by taking adverse employment actions—specifically, the termination of Plaintiff SWITZER and the suspension of Plaintiff CHIRCOP—which were substantially motivated by Plaintiffs' actual or perceived political activities and associations.

44. As a direct and proximate result of Defendants' violations of Labor Code

sections 1101 and 1102, Plaintiffs have suffered and will continue to suffer injuries and damages, including but not limited to lost wages, lost employment benefits, harm to their professional reputations, emotional distress, and other economic and non-economic damages in an amount according to proof.

45. Pursuant to Labor Code section 1105, Plaintiffs are entitled to recover all damages sustained as a result of Defendants' unlawful conduct, in addition to equitable relief including reinstatement for Plaintiff SWITZER, expungement of adverse personnel records for both Plaintiffs, and injunctive relief. Plaintiffs are further entitled to an award of reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

### THIRD CAUSE OF ACTION
Retaliation under California Labor Code § 98.6
**(Against Defendants CITY OF SANTA MARIA and DANDRIDGE)**

46. Plaintiffs hereby incorporate each and every preceding paragraph as though set forth here.

47. California Labor Code § 98.6 prohibits employers from discharging, retaliating, or discriminating against any employee or applicant for employment because they: filed a complaint or claim with the Labor Commissioner; made a written or oral complaint regarding unpaid wages; initiated a proceeding under the Labor Code; or exercised rights on behalf of themselves or others under the Labor Code.

48. Plaintiff engaged in protected activity by disclosing working conditions of the Santa Maria Fire Department to the public and by engaging in door-to-door canvassing as well as picketing in support of Local 2020.

49. Defendant retaliated against Plaintiff by terminating Plaintiff SWITZER and suspending Plaintiff CHIRCOP for two 24-hour shifts without pay.

50. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer economic damages, including lost wages and benefits, and non-economic damages, including emotional distress.

///

**FOURTH CAUSE OF ACTION**
Violations of California Labor Code § 232.5 (speech about working conditions)
**(Against Defendants CITY OF SANTA MARIA and DANDRIDGE)**

51. Plaintiffs hereby incorporate each and every preceding paragraph as though set forth here.

52. Labor Code § 232.5 prohibits employers from requiring employees to refrain from disclosing information about working conditions; Requiring employees to sign waivers denying their right to disclose such information; Discharging, disciplining, or discriminating against employees who disclose information about working conditions.

53. Plaintiffs engaged in protected activity by publicly disclosing information regarding unsafe, unlawful, or otherwise concerning working conditions at Defendants' workplace.

54. Defendant retaliated against Plaintiffs by terminating Plaintiff SWITZER's employment with Defendant CITY and disciplining Plaintiff CHIRCOP, in violation of Labor Code § 232.5.

55. The disclosure of working conditions was a substantial motivating reason for Defendant's adverse employment actions against Plaintiff.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered and continue to suffer economic damages, including lost wages and benefits, and non-economic damages, including emotional distress.

57. Defendant DANDRIDGE's conduct was willful, malicious, and oppressive, entitling Plaintiff to punitive damages under applicable law.

**VII.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For general, special, exemplary, compensatory (including lost wages and benefits, including pension benefits), statutory, and other damages according to proof;

3. For costs of suit in an amount yet to be ascertained;

4. For prejudgment interest according to law in an amount yet to be ascertained;

5. For attorneys' fees in an amount yet to be ascertained;

6. For injunctive relief preventing Defendants from causing other further injuries to Plaintiffs;

7. For such other and further relief as this Court may deem proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Dated: November 7, 2025

Respectfully Submitted,
FERRONE LAW GROUP

By: _____

Derek G. Thompson
Attorneys for Plaintiffs
TRAVIS SWITZER and MATTHEW CHIRCOP