1 | CITY ATTORNEY FOR THE CITY OF SANTA MARIA
THOMAS T. WATSON, State Bar No. 144457
2 | *twatson@cityofsantamaria.org*
204 E. Cook Street
3 | Santa Maria, CA 93454
Telephone: (805) 925-0951
4 | Facsimile: (805) 928-1275

5

6 | ALESHIRE & WYNDER, LLP
NORMAN A. DUPONT, State Bar No. 85008
  *ndupont@awattorneys.com*
7 | CODY S. PARKER, State Bar No. 359372
  *cparker@awattorneys.com*
8 | 3701 Wilshire Blvd., Suite 725
Los Angeles, California 90010
9 | Telephone: (310) 527-6660
Facsimile: (949) 223-1180

10

11 | Attorneys for Defendants
CITY OF SANTA MARIA and
BRADLEY DANDRIDGE

12

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TRAVIS SWITZER and MATTHEW CHIRCOP, | Case No. 2:25-cv-010716-ODW-AJR |
| Plaintiffs, | **DEFENDANTS CITY OF SANTA MARIA AND BRADLEY DANDRIDGE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO 12(b)(6) AND MOTION TO STRIKE PUNITIVE DAMAGE ALLEGATIONS PURSUANT TO RULE 12(f)** |
| v. | |
| CITY OF SANTA MARIA; BRADLEY DANDRIDGE, individually and as Fire Chief of the City of Santa Maria; and DOES 1-10, | |
| Defendant. | [Filed concurrently with Declaration of Cody S. Parker; Declaration of Graciela Reynoso; Request for Judicial Notice and [Proposed] Order] |
| | Date: January 12, 2026 Time: 1:30 p.m. Courtroom:5D |
| | Case Filed:   November 7, 2025 |

01157.0022 2066339.5

**PLEASE TAKE NOTICE** that on January 12, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Otis D. Wright, II of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants, City of Santa Maria ("City") and Bradley Dandridge ("Chief Dandridge", and collectively "Defendants") will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing Plaintiffs' Complaint (Dkt. No. 4) in its entirety. In addition, Defendants move to strike the punitive damage allegations in the Fourth Cause of Action and that portion of the Prayer for Relief that seeks "exemplary" damages. The motions are made on the following grounds:

First, the first cause of action fails against the City and Chief Dandridge acting in his official capacity[1] because it does not establish a First Amendment protected speech claim by a public employee. If there is no protected speech, then the inquiry stops there. (*Burch v. City of Chubbuck*, 146 F.4th 822, 832 (9th Cir. 2025) ("If the plaintiff's speech is not protected, our inquiry ends there.").)

Second, the first cause of action fails to establish municipal liability under *Monell v. New York Department of Social Services,* 436 U.S. 658 (1978) ("*Monell*"). The Complaint has a factual lacuna of any allegations about a

---

[1] Plaintiffs allege: "At all times relevant to the allegations contained herein, Defendant DANDRIDGE was acting in his official capacity and within the course and scope of his employment and/or agency with the CITY." (Comp. ¶8) Therefore, the claim against Chief Dandridge is treated akin to a claim against the City itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–472, 105 S.Ct.873, 878 (1985). It is not a suit against the official personally, for the real party in interest is the entity.")

municipal "policy, practice, or custom" of acting against municipal firefighters who allegedly exercised their free speech rights.

Third, Plaintiff Chircop's first cause of action for violation of 42 U.S.C. Sec. 1983 alternatively fails because their individual failures to appeal a decision initially made by Fire Chief Dandridge means that Dandridge was not a "final decision maker" for purposes of *Monell* liability.

Fourth, Plaintiffs' state law pendent claims (second-fourth causes of action) for putative violations of California Labor Law provisions should be dismissed either as pendent claims that are independent of the federal (Section 1983) cause or because they lack merit on their own. Plaintiffs fail to state a legal claim under either Labor Code Sections 1101-1102 or Section 98.6 or Section 232.5. These Labor Code provisions apply to "employers" and thus Chief Dandridge must be dismissed as he is not the employer. The Labor Code provisions also lack merit as there has been no violation of any of the specific standards by the City. Indeed, the City's only "regulation" of speech by firefighters is that the employee not be on-duty or wear her or his uniform during political activity. This conforms with pre-existing state law, specifically Government Code section 3252(a), which provides: "Except as otherwise provided in Chapter 9.5 (commencing with Section 3201), ***or whenever on duty or in uniform***, no firefighter shall be prohibited from engaging, or be coerced or required to engage, in political activity." (emphasis added). This is a reasonable regulation of the "time, place or manner" or speech and is a provision recognized by Plaintiff Chircop's union, Local 2020 in the labor-management agreement between the union and the City (as employer).[2]

In addition, Defendants move to strike the punitive damage allegations

---

[2] Plaintiffs did not specifically pled the requirements of the City Administrative Memorandum related to this event, but we note that they do exist.

contained in the Fourth Cause of Action, Paragraph 57 and the related request for "exemplary" damages in Section 1 of the Prayer for Relief on the grounds that: (a) a mere recital of the basic elements of a punitive claim—willful, malicious and oppressive" without more is insufficient as a matter of federal pleading (or under state law). Moreover, it constitutes a spurious issue that will consume considerable litigation time when, as a matter of law, Section 1983 does not permit allegations against a public office who is alleged to have acted in his public capacity. Nothing in California Labor Code section 232.5 permits an exception to this general rule.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action including Plaintiffs Complaint, the Declarations of Cody S. Parker and Graciela Reynoso, the Request for Judicial Notice, and on such additional evidence and argument as the Court may consider at the hearing thereon.

This Motion is made following the conference between counsel for all Defendants and Plaintiffs pursuant to Local Rule 7-3, which took place via videoconference (ZOOM) call on December 1, 2025. That videoconference was also accompanied by a subsequent email outlining the intended arguments for this Motion. (Declaration of Cody S. Parker ¶3-4, Ex. A.)

DATED: December 8, 2025    ALESHIRE & WYNDER, LLP
NORMAN A. DUPONT
CODY S. PARKER


By: _____
NORMAN A. DUPONT
Attorneys for Defendants,
CITY OF SANTA MARIA and
BRADLEY DANDRIDGE

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 9

II. FACTS—AS ALLEGED IN COMPLAINT ........................................... 9

    A. Parties and Their Capacities ............................................................. 9

    B. Allegations as to the City ................................................................. 10

    C. General Allegations as to Chief Dandridge .................................... 12

    D. Switzer's Specific Allegations as to Chief Dandridge .................... 13

    E. Chircop's Specific Allegations to Chief Dandridge ........................ 14

III. ARGUMENT ............................................................................................. 15

    A. Plaintiffs Fail to Meet Their Burden to Establish a "Protected" Speech Under the First Amendment (First Cause of Action) ...... 15

        1. Plaintiff Switzer cannot establish any "speech", let alone any protected First Amendment speech ........................................... 15

        2. Plaintiff Chircop Can Establish Speech, but Not as anything other than a public employee. ................................................... 17

    B. Plaintiffs Fail to Allege that the City had a "Policy, Custom or Practice" of Retaliated Against Speech ......................................... 19

    C. Plaintiff Chircop Cannot Rely Upon a "Municipal Final Decision Maker" Analysis When he had a Right to Appeal to the City Manager and Choose to Forego that Appeal. ................................. 21

    D. Plaintiffs Pendent State Law Claims Should be Dismissed .......... 22

        1. Claims for Violation of Cal. Labor Code Sections 1101 and 1102 ...................................................................................... 22

        2. Claims of Retaliation under Cal. Labor Code Section 98.6 ...... 24

3. Claims of Violations of Cal. Labor Code Sec. 232.5..................25

IV. THE MOTION TO STRIKE PUNITIVE DAMAGE ALLEGATIONS SHOULD BE GRANTED ....................................................................27

V. CONCLUSION ........................................................................28

# TABLE OF AUTHORITIES

**Cases**

*A.E. v. Cnty. of Tulare*
  666 F.3d 631 (9th Cir. 2012) ........................................................... 9

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970) .............................................................. 11, 19

*Berg v. Empire Blue Cross & Blue Shield*
  105 F. Supp.2d 121 (E.D.N.Y. 2000) ............................................ 22

*Board of the County Commissioners of Bryan County v. Brown*
  520 U.S. 397 (1997) ................................................................... 12

*Brandon v. Holt*
  469 U.S. 464, 471–472, 105 S.Ct.873, 878 (1985) ........................ 2

*Burch v. City of Chubbuck*
  No. 24-3646,  2025 WL 2089115 (9th Cir. July 25, 2025) ........... 16, 18

*Burden v. Snowden*
  2 Cal.4th 556 (1992) ................................................................. 14

*Chung v. Rosen*
  2025 WESTLAW 2662864 (N.D. Cal. 2025) ................................ 16

*City of Canton v. Harris*
  489 U.S. 378 (1989) ................................................................... 19

*City of Los Angeles v. Heller*
  475 U.S. 796 (1986) ................................................................... 19

*City of Newport v. Fact Concerts*
  453 U.S. 247 (1981) ................................................................... 28

*City of St. Louis v. Praprotnik*
  485 U.S. 112 (1988) ................................................................... 21

*Coming Up, Inc. v. City & County of San Francisco*
  830 F. Supp. 1302 (N.D. Cal. 1993), *reconsideration granted in part* 857 F. Supp. 711(N.D. Cal. 1994) ................................................. 21

*Dahlia v. Rodriquez*
  735 F.3d 1066 (9th Cir. 2013)(en banc) .................................. 17, 18

*Gillette v. Delmore*
  979 F.2d 1342 (1992) ................................................................. 21

*Kentucky v. Graham, supra*
  473 U.S. 159 (1985) ................................................................... 28

*Massey v. Thrifty Payless, Inc.*
  2014 WL 2901377 (Cal. Ct. App. June 27, 2014) ......................... 27

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

*Monell v. Department of Social Services of City of New York*
  436 U.S. 658 (1978) .......................................................... passim

*Pembaur v. City of Cincinnati*
  475 U.S. 469 (1986) ................................................................ 21

*Trevino v. Gates*
  99 F.3d 911 (9th Cir. 1996) ..................................................... 19

*U.S. ex. rel. Lupo v. Quality Assurance Services, Inc.*
  242 F.Supp.3d 1020 (S.D. Cal. 2017) .................................. 22, 25, 26, 28


**Statutes**

42 U.S.C. Section 1983 ........................................................ passim

California Labor Code §98.6 ................................................... 3, 25

California Labor Code §232.5 ................................................ passim

California Labor Code §235.5(a) .................................................. 27

California Labor Code §235.5(b) .................................................. 27

California Labor Code §1101 ............................................... 3, 23, 25

California Labor Code §1102 ............................................... 3, 23, 24

California Labor Code §1102.5 ............................................... 22, 25

Government Code §3252(a) ........................................................ 3

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ................................ 2

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This suit, brought under the jurisdictional guise of a 42 U.S.C. Section 1983 claim ("Section 1983") is yet another effort to federalize what is merely a state law labor issue.  Indeed, in this case, three out of the four pendent claims cite to California labor law provisions, and the first claim made pursuant to Section 1983 is laden with labor-management claims and alleged disputes.

Whatever the jurisdictional merits of trying to transmogrify a state labor law dispute into a federal dispute, the Complaint in this case (Dkt. No. 4) fails for one simple reason—none of the allegations under the First Cause of Action (Section 1983 claim) satisfy the *Monell* standard for liability against a municipal entity or a municipal officer acting in his official capacity as an agent of that entity.

The remaining pendent state law claims should be dismissed as pendent claims.  Alternatively, because the City's action taken against Plaintiff Chircop and Plaintiff Switzer was authorized under both state law governing political activities by firefighters and under the pertinent labor agreement between the City and Union 2020, those claims should be dismissed on their merits.

## II.    FACTS—AS ALLEGED IN COMPLAINT[3]

### A.    Parties and Their Capacities

Plaintiff Travis Switzer ("Switzer") was a firefighter employed at the

---

[3] In this motion to dismiss, we accept those facts that are properly plead in the Complaint.  Defendants reserve the right to contest these facts at some later juncture whether in motions or at trial.  Defendants also ignore any allegation in the Complaint that is implausible under the *Iqbal* standard. *A.E. v. Cnty. of Tulare*, 666 F.3d 631, 617 (9th Cir. 2012)(reciting pleading standard for Section 1983 claim: "First, to be entitled to the presumption of truth, allegations in a

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

City of Santa Maria's Fire Department until January 9, 2025. (Comp. ¶5.) Plaintiff Matthew Chircop ("Chircop") is a Captain employed in the City's Fire Department. He was also a member of the Santa Maria Fire Fighters Local 2020. (Comp. ¶6.) Defendant the City is a municipal corporation within the County of Santa Barbara. (Comp. ¶7.) Chief Dandridge is the Fire Chief for the City and at all times acting within his official capacity. (Comp. ¶8.)

**B.    Allegations as to the City**

Plaintiffs (but mostly Chircop) spend five paragraphs alleging various anti-union rhetoric by Chief Dandridge. (Comp. ¶¶17-21.) Then, in a single paragraph, Plaintiffs make their principal factual allegation as to the City. It merits quotation:

> 22. CHIRCOP and Local 2020 members were similarly on the receiving end of the City of Santa Maria City Councils [sic Council's] ire. Members of the City Council have accused Local 2020 and their members of being liars. City Council's strained relationship with the Local 2020 became more tense after Local 2020 filed two unfair Labor Charges with the Public Employment Relations Board in 2024.

That is the sole factual allegation of action "taken by the City" that is "adverse" to the Plaintiffs.  This does not constitute "adverse action" under any provision of the Labor Code or the City Administrative Memorandum between the City and the union. Although Plaintiffs later allege that: "There are of course additional activities which have not been included in this claim." (Comp. ¶34 at 8:3.) They also then assert that all of the allegations

---

complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")

in Paragraphs 1-34, taken collectively "... clearly show that the adverse actions taken against Plaintiffs were taken by individuals whose actions represent official policy." (Comp. ¶35.) This allegation is implausible on its face—it suggests that the City has an "official policy" of retaliating against firefighters.  Plaintiffs do not otherwise elucidate this overly vague claim of some amorphous policy.

Even if *arguendo* Plaintiffs' claims as to Captain Chircop were construed in a fashion to allow for the possibility of retaliation against his June 20, 2024 speech, the claims as to probationary employee Simpson show no such policy.  Simpson, by his own admission, did not even "utter a word" at that presentation, so the City's rejection of his probationary appointment (**RJN Exs. 1-2**) cannot be construed as such a policy. An isolated innocent (against assuming arguendo such a claim as to Chircop) does not constitute a "widespread practice that ... is 'so permanent and well settled as to constitute a custom or usage'. As the Supreme Court put it in an earlier case involving Section 1983 violations: "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970).) Thus, the "practices" the state official (in this case, the City and Defendant Dandridge) must be "so permanent and well settled" as to constitute an unwritten but very real legal custom.  There is no such practice shown here.

Plaintiffs have at the very most (and Defendants will challenge the underlying factual allegations at a later stage) a single isolated incident of one firefighter (Chircop) who spoke at a public meeting and then (some six months later) suffered an adverse employment action.  (**RJN Ex. 3.**)[4]

---

[4] It is noteworthy that Chircop choose not to challenge in a pre-disciplinary

## C.    General Allegations as to Chief Dandridge

Plaintiffs' allegations against Chief Dandridge are more vehement, but also shed little light on the ultimate issues. For example, Chief Dandridge is accused of "animus" as to the Union. (Comp. ¶17.) He is further accused of having made a protected speech—that Local 2020 members who were engaged in political action [improperly] might be subject to discipline. (Comp. ¶18.) Later, Chief Dandridge allegedly "cornered a firefighter in an intimidating manner with the intent to get that firefighter to work for a different agency." Chircop and Chief Dandridge then had words (Plaintiffs version is the Chief "excoriated Chircop") over the incident. (Comp. ¶19.) Then, Chief Dandridge is alleged to have conducted "promotional interviews" with "promotional candidates" at the Union asking them whose "side" they were on. (Comp. ¶20.) Finally, Chief Dandridge allegedly stated in a labor-management meeting that he would not use any policy "that benefits Local 2020 or its members." (Comp. ¶21.)

The fatal flaw: Nowhere is there an allegation that Chief Dandridge relied upon or used his rhetoric in the specific adverse actions against Plaintiff Switzer or Plaintiff Chircop. (*See Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 400, 410 (1997) (reference to single hiring decision by county Sheriff insufficient; "As our decision in *Canton* makes clear, "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").)  The Complaint is devoid of such an allegation, and any inference as to Plaintiff Chircop is extremely weak—there is no showing

---

*Skelly* hearing the one adverse action taken against him.  Rather, Chircop had his lawyers send a "see you in court instead" message. *Compare* **RJN Ex. 3** (Notice of Intent to Discipline with reference to right to hearing) with **RJN Ex. 4** (response by Chircop's counsel, Mr. Thompson to City).

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

1    that Chief Dandridge's single decision (subject to an appeal to the City

2    Manager) to take a single disciplinary action could predictably amount to

3    "deliberate indifference" to Chircop's constitutional rights.

4    **D.    Switzer's Specific Allegations as to Chief Dandridge**

5        Switzer makes a few allegations specific to his termination as to

6    Chief Dandridge.  Switzer alleges that he was an "on-duty" fire engine

7    crew who attended a "presentation" (to an unstated group) that Chircop

8    "performed routinely" for other community groups. (Comp. ¶ 24.) Switzer

9    further alleges that he made no speech or presentation to this group; to

10   the contrary, Switzer did: "Not utter a single word during the event as he

11   was merely present because he just happened to be the on-duty firefighter

12   assigned to Captain Chircop [that day]." (Comp. ¶25.)

13       Switzer then alleges that he was summoned to an "interrogation" by

14   Chief Dandridge on July 4, 2024. (Comp. ¶26.) Switzer does not allege that

15   any adverse employment action took place as a result of that

16   "interrogation."   Rather, Switzer alleges that six months later Chief

17   Dandridge "summarily terminated" Switzer's employment prior to the

18   completion of Switzer's probationary employment period. (Comp. ¶¶27-

19   28.)[5]

20   _____

21   [5] Defendants ask this Court take judicial notice of portions of Santa Maria's
     Municipal Code (**RJN Ex. 1**), the definitional section of the City's personnel

22   Chapter 2 which define an "at-will employee" including a probationary employee
     and states that: 'at-will' employee who has no property rights in his or her

23   position." Santa Maria Mun. Code, §2-20.01 (Definitions–for "At will employee").
     Plaintiffs' Complaint also used the term "probationary period", and Defendants

24   ask this Court to take judicial notice of that term as defined in Santa Maria
     Mun. Code, §2-20.01 (Definition for "probationary period"-- "Probationary

25   period" means a period to be considered an integral part of the examination,
     recruiting, testing, and selection process during which an employee is required

26   to demonstrate his/her fitness for the duties to which he/she is appointed by

27   actual performance of the duties of his/her position over an extended period for

28

### E.    Chircop's Specific Allegations to Chief Dandridge

Chircop's specific allegations as to actions taken by Chief Dandridge are yet more brief.  He alleges that on January 9, 2025 the Chief provided him with a notice of intent to discipline—specifically a suspension of two 24-hour shifts without pay. (Comp. ¶29.)   The notice, per Chircop, contained an explanation—that Chircop had engaged in political activity on June 20, 2024. (*Id*.) Where a complaint alleges a specific document as having some binding force but fails to attach that document, then the Court can review the document—in this case the Notice of Intent to Discipline—in considering a motion to dismiss.

The complete Notice of Intent to Discipline (**RJN Ex. 3**) further advised Chircop that as a full-time employee he had a right to a *Skelly* hearing that would include a "pre-disciplinary hearing" and an opportunity to present written evidence to contradict the charges. (*Id*.) Shortly thereafter, Chircop, through his current legal counsel, stating he was waiving such a right and would rather: "At this time Captain Chircop is electing to seek remedy for this disciplinary action in the Superior Courts of California and with the Public Employment Relations Board." (**RJN Ex. 4**—Chircop Lawyer's Response to Notice of Intent to Discipline.) Thereafter, Chircop received a Final Notice of Suspension in March 2025 that provided him with a procedural option to appeal. (**RJN Ex. 5;** *see* Comp. ¶29— Chircop was "ultimately handed down a two 24-hour shift

---

observation and evaluation before an employee becomes permanent.") Thus, as a matter of law a probationary employee such as Switzer was not entitled to a full pre-discipline *Skelly* hearing. *See Burden v. Snowden*, 2 Cal.4th 556, 562-563 (1992)(rejecting claims by police recruit that she was covered by Public Safety Officers Procedural Bill of Rights Act because as a probationary recruit she was not qualified under that Act and lacked further due process rights).

1  suspension without pay.")[6]

2  ## III.    ARGUMENT

3  ### A.    Plaintiffs Fail to Meet Their Burden to Establish a
4  "Protected" Speech Under the First Amendment (First
5  Cause of Action)

6  Plaintiffs in their first cause of action makes generic blunderbuss
7  allegations that "The acts and omissions of Defendants, and each of them,
8  were done by Defendants under color of state law… and as policy making
9  authorities to which Defendant City delegated its governing powers in the
10  subject matter…" (Comp. ¶34.) Plaintiffs attempt to reinforce this
11  allegation with a further generic allegation that their prior allegations
12  "clearly show that the adverse actions taken against Plaintiffs were taken
13  by individuals whose actions represent official policy." (Comp. ¶35.)

14  But soft, but what light through yonder window breaks?  Plaintiffs
15  fail to establish that any of their "speech" was protected First Amendment
16  speech and that ends that. We examine each Plaintiff's claim separately.

17  ### 1.    *Plaintiff Switzer cannot establish any "speech", let*
18  *alone any protected First Amendment speech*

19  Plaintiff Switzer fails to demonstrate that he uttered any "speech,"
20  let alone that the speech was protected under the First Amendment.  As
21  the District Court in the Northern District of California recently
22  summarized the burden of proof on a public employee:

23  In the Ninth Circuit, courts must analyze a public employee's
24  claim of retaliation in violation of the First Amendment by
   proceeding through a five-step inquiry:

25  _____

26  [6] **RJN Ex. 5** also contradicts Chircop's claim that he had no speedy remedy or
27  adequate remedies. (Comp. ¶36.)  Chircop was provided with a right to appeal
   within the City to the City Manager (a position different than Chief Dandridge).
28  He simply rejected the opportunity for a prompt review by the City Manager in
   favor of his own *preferred remedy*-this lawsuit.

> 1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Burch v. City of Chubbuck*, No. 24-3646, 2025 WL 2089115, at *5 (9th Cir. July 25, 2025).

*Chung v. Rosen*, 2025 WESTLAW 2662864 at *3 (N.D. Cal. 2025).[7]

As the Ninth Circuit in *Burch* also observed, it is the plaintiff's burden to establish the first three elements and that:

> The first two steps—whether the plaintiff spoke on a matter of public concern, and if so, whether that speech was made as a private citizen or a public employee—form the lodestar question of whether the plaintiff's speech is protected under the First Amendment. [citation omitted]. If the plaintiff's speech is not protected, our inquiry ends there.
> *Burch, supra,* 146 F.4th at 832.

Plaintiff Switzer fails to satisfy either of the first two required steps under the Ninth Circuit standard. First, Switzer admitted that he "did not utter a single word during the [June 20, 2024] event." (Comp. ¶25). Thus, there was not even a claim of speech uttered by Switzer.

Second, Switzer cannot establish that his mere attendance at the speech (that Chircop gave) was anything other than as a public employee in the course of his duties. As Switzer admits: "[H]e was merely present [at the June 20, 2024 presentation to the Democratic Club] because he just

---

[7] The Ninth Circuit's decision in *Burch v. City of Chubbuck* is now available in published version at 146 F.4th 822 (9th Cir. 2025).

happened to be the on-duty firefighter assigned to Captain CHIRCOP who was performing the public education event." (Comp. ¶25).

Switzer cannot establish either of the first two elements of the five-part test imposed by the Ninth Circuit.  Therefore, the inquiry as to him "stops there."

### 2.    Plaintiff Chircop Can Establish Speech, but Not as anything other than a public employee.

Chircop does allege that he made a speech, or at least "lead a routine public education presentation" on June 20, 2024 to the Democratic Club of Santa Maria Valley. (Comp. ¶23).  Chircop, however, repeatedly alleges he did this as a public official speaking in that capacity:

*He delivered this while "on-duty as a Fire Captain" (Comp. ¶23);

*This was a routine public education presentation, which was a "standard topic for such community outreach" (Comp. ¶23);

*The presentation [by Chircop] was… "performed like the Fire Department would for any other community organization." (Comp. ¶23.)

*Beyond this, Chircop is a Fire Captain, and, as demonstrated in his job description (**RJN Ex. 6)**, his job position requires that he participate in "public relations" events. Chircop strayed beyond his normal mandate by giving such a presentation while he was on duty, but that alone does not detract from the broader point that, per even Chircop, this was a speech in his capacity as a public employee.

In evaluating whether Chircop's speech was made as a public employee or as a private citizen, the Ninth Circuit looks beyond his formal job description and evaluates the three factors set forth in *Dahlia v. Rodriquez,* 735 F.3d 1066, 1074-1076 (9th Cir. 2013)(en banc): (1) "whether or not the employee confined his communications to his chain of command"; (2) examining the "subject matter of the communication"; and

(3) asking whether the employer spoke "in direct contravention to his supervisor's orders." (*Burch, supra,* 146 F.4th at 834.)

In this case, Chircop did not confine his speech to just his change of command. But this factor, while relevant, is not necessarily dispositive. (*Dahlia, supra* at 1074.)

On the other hand, the subject matter of the speech, as per Chircop, was a "routine public education presentation on the City's mutual-aid and Incident Command System (ICS) protocols. . ." (Comp. ¶23.) This is a quintessential presentation by a fire fighter to public groups. (Id.) Chircop does not describe this as being anything out of the ordinary in terms of his job duties, and further alleges that this presentation was "scheduled" for that day—a further inference that it was part of his "public employee" job. **RJN 6** confirms that Chircop's position of Fire Captain required participation in "public relations" events.

Finally, Chircop does not allege that he spoke at the Democratic Club in direct contravention of either Chief Dandridge or any Battalion Chief's direct orders to the contrary.

When one completes the fact-intensive review of Chircop's presentation on June 20, 2024, it is clear beyond peradventure that Chircop's role was that of a public employee, not as a private citizen. Indeed, a private citizen would presumably not even know about the details of the Department's "ICS" protocols. Based on Plaintiffs' own admissions in their Complaint, the inquiry into the two public employees alleged First Amendment speech claims ends. The Complaint (as to the first cause of action) must be dismissed on that basis alone.

For completeness, however, we next address the further failure of the Complaint to allege in sufficient manner that Plaintiffs have met the *Monell* standard for imposing liability upon the City or the Chief.

## B.    Plaintiffs Fail to Allege that the City had a "Policy, Custom or Practice" of Retaliated Against Speech

Where no constitutional violation is adequately pled, municipal liability cannot lie. (*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).) Yet even if the Complaint plausibly alleged some constitutional injury, Plaintiffs' allegations fall far short of the standard established for section 1983 actions under *Monell v. Department of Social Services of City of New York*.

A municipality may be held liable under 42 U.S.C. section 1983 only when a plaintiff plausibly alleges that a local government entity's "policy or custom" was the "moving force" behind the alleged constitutional injury. (*Monell v. Dep't of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 694 (1978).) That is, municipal liability arises only where a plaintiff identifies either an official, express policy, or a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970).) By contrast, isolated or sporadic incidents are insufficient to establish a municipal custom. (*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).)

Finally, a plaintiff cannot state a claim for municipal liability based on failure to train or supervise without plausibly alleging that such failure amounted to "deliberate indifference to the rights of its inhabitants." (*City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).) This is a stringent standard, met only where the need for more or different training was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (*Id.* at 390.)

Here, Plaintiffs identify no official City policy of harassing or retaliating against firefighters for constitutionally protected speech. While

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

the Complaint pleads facts regarding adverse employment actions directed at Switzer and Chircop, it does not identify any City rule, ordinance, or directive requiring or authorizing these actions. Rather, it attributes them to Chief Dandridge's alleged "animus" towards Local 2020 and its activities, with only a conclusory allegation that the actions "represent official policy." (Comp. ¶¶ 17, 35.)

Neither does the Complaint plead any well-settled practice or pattern of similar incidents sufficient to support municipal liability for Plaintiffs' section 1983 claims under *Monell*. Plaintiffs' supposed constitutional impairments arise from individual acts of discipline, and the Complaint does not allege a widespread custom or practice of Chief Dandridge or the City disciplining or terminating other employees for political speech. Instead, Plaintiffs allege isolated, sporadic comments and actions by Chief Dandridge and other City officials, including criticism of union advocacy, questioning promotional candidates about "whose side" they were on, accusations of dishonesty by unnamed City Council members, and unspecified "additional activities" Plaintiffs could not be bothered to enumerate or describe. (Comp. ¶¶ 18–21, 34.) At most, this purported conduct indicates a strained relationship between the City and the firefighters' collective bargaining unit—not the permanent or well-settled custom necessary to sustain a claim against either Defendant under *Monell* doctrine.

Accordingly, because the Complaint alleges no municipal policy, custom, practice, or deliberate indifference on the part of the City or an official with the requisite authority—let alone one that was the "moving force" behind the claimed injury—the section 1983 claim against the City and Chief Dandridge should be dismissed.

DEFENDANTS' TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE

### C.    Plaintiff Chircop Cannot Rely Upon a "Municipal Final Decision Maker" Analysis When he had a Right to Appeal to the City Manager and Choose to Forego that Appeal.

Municipal liability under *Monell* arises only when the challenged action is taken by an official who possesses final policymaking authority for the municipality. (*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).) The mere fact that an official has discretion to make certain decisions does not transform that official into a final policymaker; rather, the official's decision constitutes "final" municipal policy only when it is unreviewable and not constrained by the policies or oversight of superior officials. (*Coming Up, Inc. v. City & County of San Francisco,* 830 F. Supp. 1302 (N.D. Cal. 1993), *reconsideration granted in part* 857 F. Supp. 711 (N.D. Cal. 1994).)

The Ninth Circuit underscored this principle holding that a fire chief's authority to hire and fire employees did not, by itself, establish municipal liability because the chief was not responsible for setting the City's employment policy. (*Gillette v. Delmore,* 979 F.2d 1342 (1992).) The court explained that municipal liability attaches only where the official's decision represents a deliberate policy choice by the municipality's authorized policymakers. (*Id*.) Moreover, when a subordinate's discretionary decisions are subject to review, municipal liability arises only if the authorized policymaker approves or ratifies both the decision and its basis. (*City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).)

The City Manager—not Chief Dandridge—holds authority to review and decide appeals of disciplinary decisions for employees such as Chircop. The "Final Notice of Suspension" issued to Chircop regarding his suspension informed Chircop of his right to appeal Dandridge's decision to

uphold the suspension. (**RJN Exhibit 5**).[8] The Notice indicated that Chircop may request an appeal to the City Manager within 15 days and failure to do so would constitute a waiver of the right to an appeal. (*Id.*) Chircop did not request an appeal, therefore waiving his right to appeal Dandridge's decision to impose discipline.

### D.    Plaintiffs Pendent State Law Claims Should be Dismissed

Plaintiffs allege three state laws for which they seek pendent jurisdiction. Given that the federal (Section 1983) claim should be dismissed for the reasons given above, the pendent state claims should be dismissed.  Alternatively, we review each of those claims on the merits and demonstrate why they should be dismissed.

### 1.    *Claims for Violation of Cal. Labor Code Sections 1101 and 1102*

Plaintiffs in their second cause of action allege violation of two separate Labor Code provisions, first Section 1001 (Cal Labor Code §1101 (2025)("No employer[9] shall make, adopt, or enforce any rule, regulation, or policy: (a)Forbidding or preventing employees from engaging or

---

[8] Plaintiffs refer to the Notice of Intent to Discipline in their Complaint but failed to attach the notice to the Complaint.  (Comp. ¶29.)  The City requests judicial notice of the document, as courts may consider documents incorporated into a complaint by reference to said document.  (*See Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp.2d 121 (E.D.N.Y. 2000).)

[9] By definition these two provisions apply only to employers, not to Chief Dandridge. The Chief was not the "employer" of either Switzer (as a probationary employee) or of Chircop. Based on this alone, the Court must dismiss Chief Dandridge as an individual defendant. *See U.S. ex. rel. Lupo v. Quality Assurance Services, Inc.,* 242 F.Supp.3d 1020, 1030 (S.D. Cal. 2017) (*Lupo*)(dismissing claims against individual defendants as pendent claim in Labor Code Sec. 1102.5 was required where statute applied only to an "employer" or "any person acting on behalf of the employer…")

participating in politics or from becoming candidates for public office. (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees.") Plaintiffs' reliance on this provision is flawed—fatally so.  They cite to no "rule, regulation, or policy" of the City of Santa Maria that so directs employees. Plaintiffs allege in conclusory fashion that Defendants violated by that section by "adopting and/or enforcing rules and policies…that impacted [Plaintiffs] association with Local 2020 and its advocacy efforts. (Comp. ¶43.) They cite, however no such rule, regulation or policy of the City that purports to limit Local 2020 or its advocacy efforts.

Plaintiffs alternatively invoke (in the same cause of action) allegations related to Cal. Labor Code section 1102. (Cal. Labor Code §1102 (2025) ("No employer[10] shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.").) Once again, Plaintiffs singularly omit any factual allegation of a "threat of discharge" or "loss of employment" made by the City to either Switzer or Chircop in an effort to influence any specific political activity.  As to the June 20, 2024 "presentation" to the Democratic Club, neither individual alleges any threat by the City prior to that event in an effort to scuttle it. (Comp. ¶¶23-25.)  Those claims are not made and Plaintiffs efforts to invoke section 1102 of the California Labor Code go up in smoke.

"Puff"—Plaintiffs' claims for a remedy including reinstatement for Switzer (Comp. ¶45)—also vaporize.  Plaintiffs allege that in addition to "damages" they are entitled to an equitable order requiring the City to

---

[10] As discussed in fn. 8, *supra*, this limited statutory language—"*employer*" mandates dismissal of Chief Dandridge individually from this cause of action.

reinstate a probationary employee—Switzer. (*Id.*) The City defines a probationary candidate as an "at will" employee. (**RJN Ex. 1.**) Thus, there can be no basis for a "reinstatement" of someone like Switzer who was purely probationary. (*See Burden, supra,* 2 Cal.4th at 562-563.)

### 2.    Claims of Retaliation under Cal. Labor Code Section 98.6

Plaintiffs in their second pendent claim (third cause of action) invoke the statutory provisions of Labor Code Section 98.6. Subpart (a) of that Section provides that:

> a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to their rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that they are owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of themselves or others of any rights afforded them.

Cal. Labor Code Sec. 98.6 (2025).

To the extent that Section 98.6 prohibits conduct contained in Section 1101 or Section 1102 of the Labor Code, then, as explained above, Plaintiffs have failed to allege any violation of such a separate section. To the extent that Section 98.6 prohibits retaliation for claims made to the Labor Commission, or alleged unpaid wages, or potential testimony before

a labor board, then the allegations made by Plaintiffs fall short. That is, neither Switzer nor Chircop allege that they were about to testify, had filed a complaint to the Labor Commissioner, or undertaken any other administrative action *before* their adverse action. (See Comp. ¶¶48-49.) Indeed, to the contrary Plaintiffs allege that they have *subsequently* filed Unfair Labor Charges with the California Public Employment Relations Board. (Comp. ¶13.)

Whatever else might be said, Plaintiffs cannot make out a claim of retaliation as to actions taken *after* the City imposed adverse employment actions.

### 3.    Claims of Violations of Cal. Labor Code Sec. 232.5

Plaintiffs in their fourth cause of action allege that both the City and Chief Dandridge violated California Labor Code section 232.5. That section reads in pertinent part:

> No employer may do any of the following:
> (a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions.
> (b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions.
> (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.
> (d) [INTENTIONALLY omitted].

First and most notably, the statutory language limits actions by an "employer." This means that Chief Dandridge, who was not the "employer" of either Switzer or Chircop, must be dismissed from this cause of action. (*Lupo*, *supra*, 242 F.Supp.3d at 1030 (discussing term "employer" in context of Labor Code section 1102.5 and dismissing individual defendants in that context).)

Second, we again measure the Plaintiffs' allegations against the Gold Standard—in this case, the statutory language.    Plaintiffs' allegations fail to meet that standard because:

*Plaintiffs do not allege that the City as a "condition of employment" required that a firefighter refrain from discussing working conditions. (Cal. Labor Code Sec. 235.5(a).)

*Plaintiffs do not allege that the City required either of them to sign "a waiver or other document" that purported to deny them the right to disclose working conditions. (Cal. Labor Code Sec. 235.5(b).)

* Plaintiffs claim that they were "publicly disclosing information regarding unsafe, unlawful, or otherwise concerning working conditions at Defendants' [sic-Defendant's] workplace" (Comp. ¶53) fails for two reasons.

First, as to Plaintiff Switzer, he by his own admission uttered "not one word" at the presentation to the Democratic Club on June 20, 2024. (Comp. ¶25.)  It's hard to "publicly disclose information" about "working conditions" when you say not one word.

Second, as to Plaintiff Chircop, although he made a "presentation" his claim is barred as a matter of law.  Chircop did not "disclose" "working conditions" at the Fire Department of the City.  Rather, according to his own allegations, he merely presented a public relations discussion of City "mutual-aid and Incident Command System (ICS) protocols. (Comp. ¶23.) The District Court in *Lupo* exhaustively reviewed the meaning of the key statutory term "working conditions." The Court there reviewed both a summary in an unpublished California Court of Appeal decision and in portions of the legislative history for Section 232.5. (*Lupo, supra,* 242 F. Supp. 3d at 1030-1031.)  After canvassing these sources, the Court initially quoted from the unreported California Court of Appeal case, *Massey v.*

*Thrifty Payless, Inc.* (2014 WL 2901377 (Cal. Ct. App. June 27, 2014)) to the effect that: "Working conditions are those conditions determined by the employer as a condition of employment. For example, one must wear a blue tie." The District Court concluded that one portion of the definition of the term "working conditions" was straightforward and would guide it: "Working conditions are those conditions determined by the employer as a condition of employment." (*Id.)*

In this case, Chircop does not allege that his "presentation" to Democratic Club of Santa Maria Valley was in fact a discussion of working conditions such as the requirement that one wear a firefighter uniform when on duty. *Au contraire*, Chircop alleges that he routinely does such presentations, but nowhere alleges this particular presentation dealt with "working conditions" as used in the statute. (Comp. ¶24.) This difference is fatal to Chircop's claims that he was later disciplined for making such a presentation—it was not part of his "working conditions" and therefore not a cognizable claim under Labor Code Section 232.5.

## IV. THE MOTION TO STRIKE PUNITIVE DAMAGE ALLEGATIONS SHOULD BE GRANTED

In an apparent afterthought, Plaintiffs throw in a claim of punitive damages in their last paragraph, alleging that: "Defendant DANDRIDGE'S conduct was willful, malicious, and oppressive, entitling Plaintiff to punitive damages under applicable law." (Comp. ¶57.) This allegation is part of Plaintiffs' Fourth Cause of Action under Labor Code Section 232.5 (*Id*.)

This gratuitous allegation should be stricken to avoid undue expense and time in Plaintiffs trying to investigate the Chief's net worth or other measure of his assets. It is an unfounded allegation coming at the end of a simple allegation of statutory wrongdoing that can only be alleged

against an employer. (*Lupo, supra,* 272 F.Supp.3d 1030-1031.)   Chief Dandridge is not the "employer" in this case.

One cannot base a claim for punitive damages against a party who is simply not liable under the underlying statute.  This justifies the motion to strike Paragraph 57 of the Complaint and to also strike the word "exemplary" in Section 1 of Plaintiffs' prayer for relief.

Nor can Plaintiffs claim exemplary damages against Chief Dandridge based on their First Cause of Action under Section 1983.  They have alleged that the Chief acted within the course and scope of his duty. (Comp. ¶8.)  Given that, under Section 1983 a municipal official is deemed to be part of the municipal entity. (*Kentucky v. Graham, supra,* 473 U.S. 159 (1985).)  Moreover, a municipal entity is not subject to punitive damages. (*City of Newport v. Fact Concerts*, 453 U.S. 247 (1981).)

Finally, Plaintiffs' claim for equitable relief under the California Labor Code to "reinstate" a probationary employee should be stricken.  It is an irrelevant claim as to someone in Switzer's position and is barred by the very definition in the City's Code of an "at will" employee.

## V.    CONCLUSION

For these reasons, the City and Fire Chief Dandridge request that the Court *grant* the motion to dismiss and *order* that the dismissal be with prejudice.

DATED: December 8, 2025          ALESHIRE & WYNDER, LLP
                                 NORMAN A. DUPONT
                                 CODY S. PARKER


                                 By:  _____
                                      NORMAN A. DUPONT
                                      Attorneys for Defendants,
                                      CITY OF SANTA MARIA and
                                      BRADLEY DANDRIDGE