CITY ATTORNEY FOR THE CITY OF SANTA MARIA
THOMAS T. WATSON, State Bar No. 144457
  *twatson@cityofsantamaria.org*
204 E. Cook Street
Santa Maria, CA 93454
Telephone: (805) 925-0951
Facsimile: (805) 928-1275

ALESHIRE & WYNDER, LLP
NORMAN A. DUPONT, State Bar No. 85008
  *ndupont@awattorneys.com*
CODY S. PARKER, State Bar No. 359372
  *cparker@awattorneys.com*
COLIN P. RYAN, State Bar No. 365920
  *cryan@awattorneys.com*
3701 Wilshire Blvd., Suite 725
Los Angeles, California 90010
Telephone: (310) 527-6660
Facsimile: (949) 223-1180

Attorneys for Defendants
CITY OF SANTA MARIA and
BRADLEY DANDRIDGE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TRAVIS SWITZER and MATTHEW CHIRCOP,<br><br>            Plaintiffs,<br><br>      v.<br><br>CITY OF SANTA MARIA; BRADLEY DANDRIDGE, individually and as Fire Chief of the City of Santa Maria; and DOES 1-10,<br><br>            Defendant. | Case No. 2:25-cv-010716-ODW-AJR<br><br>**DEFENDANTS CITY OF SANTA MARIA AND CHIEF BRADLEY DANDRIDGE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(f) AND MOTION TO STRIKE**<br><br>Filed concurrently with Declaration of Cody S. Parker; Declaration of Graciela Reynoso;  Request for Judicial Notice and [Proposed] Order<br><br>Date:          February 23, 2026<br>Time:          1:30 p.m.<br>Courtroom:  5D<br><br>Case Filed:   November 7, 2025 |

01157.0022 2075476.3

**PLEASE TAKE NOTICE** that on February 23, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Otis D. Wright II of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants, City of Santa Maria (City) and Chief  Bradley Dandridge (Chief Dandridge, and collectively Defendants) will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing Plaintiffs' First Amended Complaint (FAC) (Dkt. No. 15) in its entirety. In addition, Defendants move to strike the punitive damage allegations in the First Cause of Action against Chief Dandridge (FAC, ¶35) and that portion of the Prayer for Relief that seeks "exemplary" damages. The motions are made on the following grounds:

1.    The first cause of action fails against both the City and Chief Dandridge acting in his official capacity[1] because it does not establish a First Amendment protected speech claim by a public employee. If there is no protected speech, then the inquiry stops there. *Burch v. City of Chubbuck*, 146 F.4th 822, 832 (9th Cir. 2025) ("If the plaintiff's speech is not protected, our inquiry ends there.") ("*Burch*"). Although Plaintiffs seek to expand the scope of their speaking activities to union-related presentations, those presentations are unrelated to any adverse employment actions taken by the City or Chief Dandridge.

2.    The first cause of action fails to establish municipal liability under *Monell v. New York Department of Social Services,* 436 U.S. 658 (1978) ("*Monell*"). The Complaint has a factual lacuna of any allegations about a municipal "policy, practice, or custom" of adverse actions against municipal firefighters who allegedly exercised their

---

[1] Plaintiffs allege: "At all times relevant to the allegations contained herein, Defendant DANDRIDGE was acting in his official capacity and within the course and scope of his employment and/or agency with the CITY." (FAC ¶5) Therefore, the claim against Chief Dandridge is treated akin to a claim against the City itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–472, 105 S.Ct.873, 878 (1985). It is not a suit against the official personally, for the real party in interest is the entity.")).

free speech rights in one specific forum on one specific day.

3.    Alternatively, Plaintiff Chircop's first cause of action for violation of 42 U.S.C. Sec. 1983 fails because his individual failure to appeal a decision initially made by Chief Dandridge means that Dandridge was not a "final decision maker" for purposes of *Monell* liability.

4.    Plaintiffs' state law claims (second-fourth causes of action) for putative violations of different California Labor Code provisions should be dismissed either as pendent claims that are independent of the federal (Section 1983) cause or because they lack merit on their own. Plaintiffs fail to state a legal claim under either Labor Code Sections 1101-1102 or Section 98.6 or Section 232.5.  The Labor Code claims also lack merit as there has been no violation of any specific Labor Code standards by the City. Indeed, the City's only "regulation" of firefighter speech is that the employee must not be on duty or dressed in uniform during political activity. This conforms with pre-existing state law, specifically Government Code section 3252(a), which provides: "Except as otherwise provided in Chapter 9.5 (commencing with Section 3201), ***or whenever on duty or in uniform***, no firefighter shall be prohibited from engaging, or be coerced or required to engage, in political activity." (emphasis added). This is a reasonable regulation of the "time, place or manner" of speech and is a provision recognized by Plaintiff Chircop's union, Local 2020 in the labor-management agreement between the union and the City (as employer).[2]

5.    Defendants move to strike the punitive damage allegations contained in the First Cause of Action, Paragraph 36 and the related request for "exemplary" damages in Section 1 of the Prayer for Relief on the grounds that as a matter of law, Section 1983 does not permit such damages against a public officer who is alleged to have acted in his official capacity.  Nothing in Section 1983 permits an exception to this rule.

This Motion is based upon this Notice, the attached Memorandum of Points and

---

[2] Plaintiffs did not specifically pled the requirements of the City Administrative Memorandum related to this event, but those provisions do exist.

Authorities, all pleadings and papers on file in this action including Plaintiffs
Complaint, the Declarations of Colin P. Ryan and Graciela Reynoso, the Request for
Judicial Notice, and on such additional evidence and argument as the Court may
consider at the hearing thereon.

This Motion is made following the conference between counsel for all
Defendants and Plaintiffs pursuant to Local Rule 7-3, which took place via
videoconference (ZOOM) call on January 9, 2026.  That videoconference was also
accompanied by a subsequent email outlining the intended arguments for this Motion.
(Declaration of Colin P. Ryan ¶3-4, Ex. A.)

DATED: January 16, 2026        ALESHIRE & WYNDER, LLP
                               NORMAN A. DUPONT
                               CODY S. PARKER
                               COLIN P. RYAN


                          By: _____
                               NORMAN A. DUPONT
                               Attorneys for Defendants,
                               CITY OF SANTA MARIA and
                               BRADLEY DANDRIDGE

-4-
DEFENDANTS' MOTION TO DISMISS FAC PLAINTIFFS' COMPLAINT AND TO STRIKE

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 9

II.   FACTS—AS ALLEGED IN THE FAC ................................................. 9

      A. Parties and Their Capacities ........................................................... 9

      B. Allegations as to the City .............................................................. 10

      C. General "Factual" Allegations as to Fire Chief Dandridge ......................... 11

      D. The "speech" activity by Chircop with Switzer attending that led to
         separate adverse actions on January 9, 2025 ............................................. 11

III.  PLAINTIFFS' SECTION 1983 CLAIM FAILS AS A MATTER OF
      LAW (FIRST CAUSE OF ACTION) ................................................... 12

      A. Neither Plaintiff Has a Protected Speech Claim Based on the June
         20, 2024 Presentation to the Democratic Club ............................................ 12

         1.  Plaintiff Switzer Did Not "Speak" at the Presentation .......................... 12

         2.  Plaintiff Chircop's speech is not protected under the Garcetti
             decision ................................................................................ 13

      B. Even if, arguendo, Plaintiffs could establish some "protected
         speech", they fail to establish that this one incident of ending the
         probationary period of one employee and limited the salary of
         another constituted a "Policy, Practice or Custom" ................................... 15

      C. Plaintiffs Fail to Allege that the City had a "Policy, Custom or
         Practice" of Retaliation Against Speech .................................................. 16

      D. Plaintiff Chircop Cannot Rely Upon a "Municipal Final Decision
         Maker" Analysis When he had a Right to Appeal to the City
         Manager and Choose to Forego that Appeal. .......................................... 18

E. Plaintiffs' So-called "Supplemental" State Law Claims Should be
   Dismissed ................................................................................................... 19

   1. Claims for Violation of Cal. Labor Code Sections 1101 and 1102 ....... 20

   2. Claims of Retaliation by the City under Cal. Labor Code Section
      98.6 ................................................................................................ 21

   3. Claims of Violations of against City as to Cal. Labor Code Sec.
      232.5 .............................................................................................. 22

IV. THE MOTION TO STRIKE PUNITIVE DAMAGE ALLEGATIONS
    SHOULD BE GRANTED ................................................................................ 24

V. CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970)............................................................16, 17

*Berg v. Empire Blue Cross & Blue Shield,*
    105 F. Supp.2d 121 (E.D.N.Y. 2000) ................................................19

*Burch,*
    *supra*, 146 F.4th (9th Cir. 2025)....................................................14

*Chung v. Rosen,*
    2025 WESTLAW 2662864 (N.D. Cal. 2025) ........................................14

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986)..................................................................16

*City of Newport v. Fact Concerts, Inc.,*
    453 U.S. 247(1981)...................................................................24

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988)..................................................................19

*Cnty. of Tulare,*
    666 F.3d 631 (9th Cir. 2012) .........................................................9

*Coming Up, Inc. v. City & County of San Francisco,*
    830 F. Supp. 1302 (N.D. Cal. 1993)..................................................18

*Dahlia v. Rodriquez,*
    735 F.3d 1066 (9th Cir. 2013) .......................................................14

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)...................................................................13

*Gillette v. Delmore,*
    979 F.2d 1342 (1992) ................................................................19

*Kentucky v. Graham,*
    *supra,* 473 U.S. 159 (1985) .........................................................25

*Lupo,*
    *supra,* 242 F. Supp. 3d..............................................................23

*Massey v. Thrifty Payless, Inc.*,
(2014 WL 2901377 (Cal. Ct. App. June 27, 2014) ................................................23

*Monell v. Dep't of Soc. Serv. of City of N.Y.*,
436 U.S. 658 (1978)...........................................................................17, 18

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)...........................................................................18

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) ...................................................................17

Statutes

42 U.S.C. Section 1983...........................................................................passim

Cal. Labor Code Sec. 98.6 ...........................................................................21

Cal. Labor Code Sec. 232.5 ...................................................................22, 23, 24

Cal. Labor Code Sec. 235.5 ...................................................................22, 23

Cal. Labor Code Sec. 1101 ...................................................................20, 21

Cal. Labor Code Sec. 1102 ...........................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This suit, brought under the jurisdictional guise of a 42 U.S.C. Section 1983 claim ("Section 1983"), is yet another effort to federalize what is merely a state law labor issue.  Indeed, in this case, three out of four  claims cite to California labor law provisions, and the first claim made pursuant to Section 1983 is laden with labor-management claims and alleged disputes between the union and the employer (City).

Whatever the jurisdictional merits of trying to transmogrify a state labor law dispute into a federal dispute, the Complaint in this case (Dkt. No. 4) fails for one simple reason—none of the allegations under the First Cause of Action(Section 1983 claim) satisfy the *Monell* standard for liability against a municipal entity or a municipal officer acting in his official capacity as an agent of that entity.

The remaining state law claims should be dismissed as pendent claims. Alternatively, because the City's action taken against Plaintiff Chircop and Plaintiff Switzer was authorized under both state law governing political activities by firefighters and under the pertinent labor agreement between the City and Local 2020, those claims should be dismissed on their merits.

Finally, the punitive damages allegations against Chief Dandridge made in the first cause of action should be stricken because the Chief was, as Plaintiffs admit, acting within the scope of his official duties.

## II.    FACTS—AS ALLEGED IN THE FAC[3]

### A.    Parties and Their Capacities

Plaintiff Travis Switzer ("Switzer") was a firefighter employed at the City of

---

[3] In this motion to dismiss, we accept those facts that are properly pleaded in the Complaint. Defendants reserve the right to contest these facts at some later juncture whether in motions or at trial.  Defendants also ignore any allegation in the Complaint that is implausible under the *Iqbal* standard. *A.E. v. Cnty. of Tulare*, 666 F.3d 631, 617 (9th Cir. 2012) (reciting pleading standard for Section 1983 claim: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient

Santa Maria's Fire Department until January 9, 2025. (FAC ¶2.)  Plaintiff Matthew Chircop ("Chircop") is a Captain employed in the City's Fire Department. He is also a member and President of the Santa Maria Fire Fighters Local 2020. (FAC ¶3.) Defendant the City is a municipal corporation within the County of Santa Barbara. (FAC ¶4.) Defendant Chief Dandridge is the Fire Chief for the City and at all times acting within his official capacity. (FAC ¶5.)

### B.    Allegations as to the City

Plaintiffs (but mostly Chircop) spend five paragraphs alleging various anti-union rhetoric by Chief Dandridge. (FAC ¶¶15-19.) Then, in a single paragraph, Plaintiffs make their principal factual allegation as to the City.  It merits quotation:

> 20. CHIRCOP and Local 2020 members were similarly on the receiving end of the City of Santa Maria City Councils [sic Council's] ire. Members of the City Council have accused Local 2020 and their members of being liars. City Council's strained relationship with the Local 2020 became more tense after Local 2020 filed two unfair Labor Charges with the Public Employment Relations Board in 2024.

That is the sole factual allegation of action "taken by the City" that purportedly was directed to Plaintiffs.  This does not constitute "adverse action" under any provision of the Labor Code or the City Administrative Memorandum of Understanding (MOU) between the City and the union.[4]  As noted below, the MOU provides for a clear "grievance" procedure that would allow Captain Chircop to appeal his two-day suspension directly to the City Manager (or his designee) contesting that decision.  As the MOU also makes clear: "If the employee fails to appeal the decision at any level

---

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")

[4] Plaintiffs reference this MOU but do not attach a copy to their FAC. For convenience, Defendants request that the Court take judicial notice of the MOU in effect in 2025-2026 as an undisputed document. (**RJN Ex. 7**)

DEFENDANTS' MOTION TO DISMISS FAC PLAINTIFFS' COMPLAINT AND TO STRIKE

within the organization within ten (10) calendar days of the decision, the matter will be considered closed and shall not be subject of further appeal." (RJN Ex. 7- Sec. 13.1.1.4). Captain Chircop presumably knew of this right as President of the Union that signed the MOU. Nonetheless, he chose not to exercise this administrative appeal.

Plaintiffs later allege that: "There are of course additional activities which have not been included in this claim." (FAC ¶32, lns. 22-23.) Nevertheless, Plaintiffs do not otherwise elucidate this overly vague claim of amorphous but unstated "additional activities" in the rest of their FAC. Thus, the sole claim in the "Factual Allegations" portion of the FAC as to the City is that contained in Paragraph 20.

### C.   General "Factual" Allegations as to Fire Chief Dandridge

Plaintiffs attempt to cast Chief Dandridge as the chief villain in this labor-management dispute.  They allege that Chief Dandridge suggested that signs carried by a firefighter outside of City Hall constituted prohibited political activity, that Chief Dandridge later "cornered a [unnamed] firefighter in an intimidating manner, and that during employee interviews he asked whether a candidate was on the side of labor or management. (FAC ¶¶16-18). Plaintiffs then add as an afterthought that, subsequent to the adverse employment action as to each of them, Chief Dandridge stated he would not "utilize any policy" that benefitted the firefighters Union 2020. (FAC ¶19—referencing date of Jan. 28, 2025).

### D.   The "speech" activity by Chircop with Switzer attending that led to separate adverse actions on January 9, 2025

Passing generic allegations of "they don't like our Union" aside, what actually happened related to Plaintiffs?  The answer is that Chircop (along with Switzer and one other firefighter) attended a presentation at the Santa Maria Democratic Club. (FAC ¶¶21-22).  Plaintiffs describe this presentation as a "routine public education presentation" on the City's mutual-aid and Incident Command System (ICS) protocols. (*Id*. at ¶21). Plaintiffs aver that "nothing in the presentation was out of the ordinary." (Id. at ¶22). They state that Switzer did "not utter a single word during the event as he was

merely present because he just happened to be the on-duty firefighter assigned to Captain CHIRCOP…" (FAC ¶23).

Per Plaintiffs, Fire Chief Dandridge subsequently summoned Switzer to an "interrogation" regarding that public presentation. (FAC ¶24). Thereafter, on January 9, 2025, Dandridge released Switzer from his position as a probationary employee. (FAC ¶25).

Plaintiffs allege that on the same day (January 9) Chief Dandridge issued a notice of intent to discipline to Chircop. Plaintiffs claim that although the notice alluded to prohibited political activity, Chircop had not in fact engaged in any political activity during the June 2024 presentation to the Democratic Club. (FAC ¶26).

These two actions, according to Plaintiffs, constituted adverse employment actions. (FAC ¶27).

## III.    PLAINTIFFS' SECTION 1983 CLAIM FAILS AS A MATTER OF LAW (FIRST CAUSE OF ACTION)

### A.    Neither Plaintiff Has a Protected Speech Claim Based on the June 20, 2024 Presentation to the Democratic Club

#### 1.    Plaintiff Switzer Did Not "Speak" at the Presentation

Probationary employee Switzer, by his own admission, did not even "utter a word" at that presentation. (FAC ¶23). Other than showing up, even Plaintiffs admit that he made no other verbal or non-expressive statements. (Id.).

There can be no claim that Switzer's First Amendment right to "speak" was violated when he made no speech and appeared, as Plaintiffs' concede, merely because he was an on-duty firefighter assigned to Chircop's unit that day. (FAC ¶23). This may be the act of a dutiful probationary employee, but is it not protected speech.

///

///

///

///

2. *Plaintiff Chircop's speech is not protected under the* **Garcetti**
*decision*[5]

Chircop, on the other hand, does allege that he made a speech, or at least led "a routine public education presentation" on June 20, 2024 to the Democratic Club of Santa Maria Valley. (FAC ¶21-¶22). Chircop, however, repeatedly alleges that he did so as a public official speaking in that capacity:

*He delivered this while "on-duty as a Fire Captain" (FAC ¶21);

*This was a routine public education presentation, which was a "standard topic for such community outreach" (FAC ¶21);

*The presentation [by Chircop] "was performed like the Fire Department would for any other community organization." (FAC ¶21d.)

*Beyond this, Chircop is a Fire Captain and, as demonstrated in his job description (**RJN Ex**. 6), his position requires that he participate in "public relations" events. Chircop strayed beyond his normal mandate by giving such a presentation while on duty, but that alone does not detract from the broader point that, per Chircop, this was a speech in his capacity as a public employee.

These allegations, conceded at this juncture for purposes of this motion only, doom Chircop's claim that his presentation was protected as First Amendment speech. As the District Court in the Northern District of California recently summarized the burden of proof on a public employee:

In the Ninth Circuit, courts must analyze a public employee's claim of retaliation in violation of the First Amendment by proceeding through a five-step inquiry:

1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other

---

[5] *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Burch*, *supra*, 146 F.4th at 832 (9th Cir. 2025), *quoted in Chung v. Rosen*, 2025 WESTLAW 2662864 at *3 (N.D. Cal. 2025).

Plaintiff must establish the first three elements:

> The first two steps—whether the plaintiff spoke on a matter of public concern, and if so, whether that speech was made as a private citizen or a public employee—form the lodestar question of whether the plaintiff's speech is protected under the First Amendment. [citation omitted]. If the plaintiff's speech is not protected, our inquiry ends there.

*Burch*, *supra*, 146 F.4th at 832.

Here, Chircop cannot establish that his "presentation" to the Democratic Club was anything other than that of a public employee speaking as part of his job responsibilities. In evaluating whether Chircop's speech was made as a public employee or as a private citizen, the Ninth Circuit looks beyond his formal job description and evaluates the three factors set forth in *Dahlia v. Rodriquez*, 735 F.3d 1066, 1074-1076 (9th Cir. 2013)(*en banc*): (1) "whether or not the employee confined his communications to his chain of command"; (2) examining the "subject matter of the communication"; and (3) asking whether the employer spoke "in direct contravention to his supervisor's orders." (*Burch*, *supra*, 146 F.4th at 834.)

In this case, Chircop did not confine his speech to just his chain of command within the Department. But this factor, while relevant, is not necessarily dispositive. (*Dahlia*, *supra* at 1074.) Rather, both the subject matter—a City-wide coordination effort in event of emergencies (the ICS system)—and the fact that Chircop avers that he was doing so as part of a normal approved public relations program strongly support the ineluctable conclusion that Chircop's presentation was not protected speech by a public employee. Indeed, Chircop's job description further supports that this was a routine matter for a Captain in the Fire Department. The job description, **RJN Ex. 6**, that Chircop's position required participation in "public relations" events.

That is exactly what occurred here: Chircop was a public employee speaking at a public relations event about a public coordination effort for emergency events. Even Chircop acknowledges that his "presentation" was "In accordance with Fire Department practice…" and that "nothing in the presentation was out of the ordinary…" (FAC ¶22).

Switzer did not make any "speech" whatsoever. Chircop made a speech clearly within the scope of his position as a Fire Captain for the Department about emergency service coordination efforts.

**B.    Even if, *arguendo*, Plaintiffs could establish some "protected speech", they fail to establish that this one incident of ending the probationary period of one employee and limited the salary of another constituted a "Policy, Practice or Custom"**

The adverse actions that Plaintiffs plead here occurred in two different forms and to two different individuals. Plaintiff Switzer was a probationary employee who was, per Switzer, summoned by Chief Dandridge to an interrogation on July 4, 2024. (FAC ¶24). Then, in January 2025 Chief Dandridge terminated Switzer's employment with the Department (FAC ¶25). Separately, albeit on the same day, Chief Dandridge issued a notice of intent to discipline to Captain Chricop. (FAC ¶27). Unlike as to Switzer, Chief Dandridge gave explicit reasons for his notice of intent to Captain Chricop. (FAC ¶27). Chircop choose not to appeal the Chief's notice of intent.

These two events cannot be comingled to suggest some overall City policy. First, far from a uniform "policy" of disciplining firefighters who attended the June 20, 2024 meeting of the Santa Monica Democratic Club. Thus, Engineer Matthew Luis also attended the event with Captain Chircop and probationary employee Switzer. (FAC ¶22). Plaintiff, however, makes no allegation that the City (or the Chief) subjected Engineer Luis to an adverse employment action. Thus, the City's rejection of Switzer's probationary appointment (**RJN Exs. 1-2**) cannot be construed as such a policy. An isolated incident (against assuming arguendo such a claim as to Chircop) does not

constitute a "widespread practice that … is 'so permanent and well settled as to constitute a custom or usage.'" As the Supreme Court put it in an earlier case involving Section 1983 violations: "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970).) Thus, the "practices" of the government official (in this case, the City and Defendant Dandridge) must be "so permanent and well settled" as to constitute an unwritten but very real legal custom.  There is no such practice shown here.

The complete Notice of Intent to Discipline (**RJN Ex. 3**) further advised Chircop that as a full-time employee, he had a right to a *Skelly* hearing that would include a "pre-disciplinary hearing" and an opportunity to present written evidence to contradict the charges. (*Id*.)  Shortly thereafter, Chircop, through his legal counsel, stating that he was waiving such a right and would rather "seek remedy for this disciplinary action in the Superior Courts of California and with the Public Employment Relations Board." (**RJN Ex. 4**—Chircop Lawyer's Response to Notice of Intent to Discipline.) Thereafter, Chircop received a Final Notice of Suspension in March 2025 that provided him with a procedural option to appeal. (**RJN Ex. 5;**  *see* Comp. ¶29— Chircop was "ultimately handed down a two 24-hour shift suspension without pay.")[6]

### C.    Plaintiffs Fail to Allege that the City had a "Policy, Custom or Practice" of Retaliation Against Speech

Where no constitutional violation is adequately pled, municipal liability cannot lie. (*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).) Yet even if the Complaint plausibly alleged some constitutional injury of a right of "speech," Plaintiffs' allegations fall far short of the standard established for section 1983 actions under *Monell v. Department of Social Services of City of New York*.

---

[6] **RJN Ex. 5** also contradicts Chircop's claim that he had no speedy remedy or adequate remedies. (Comp. ¶36.)  Chircop was provided with a right to appeal within the City to the City Manager (a position other than Chief Dandridge).  He simply rejected the opportunity for a prompt review by the City Manager in favor of his own *preferred remedy*-this lawsuit.

A municipality may be held liable under 42 U.S.C. section 1983 only when a plaintiff plausibly alleges that a local government entity's "policy or custom" was the "moving force" behind the alleged constitutional injury. (*Monell v. Dep't of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 694 (1978).) That is, municipal liability arises only where a plaintiff identifies either an official, express policy, or a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970).) By contrast, isolated or sporadic incidents are insufficient to establish a municipal custom. (*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).)

Like sprinkling cheese onto an otherwise bland pizza topping, Plaintiffs attempt to drew up a weak FAC with allegations of other potentially protected speech, such as canvassing and picketing the Fire Department's inadequate hiring (FAC ¶12). None of that speech, however, resulted (per Plaintiffs) in any adverse employment action.

Plaintiffs have at the very most (and Defendants will challenge the underlying factual allegations at a later stage) a single isolated incident of one firefighter, Chircop, who spoke at a public meeting and then (some six months later) suffered an adverse employment action.  (**RJN Ex. 3**)

In this case, Plaintiffs identify no official City policy of harassing or retaliating against firefighters for constitutionally protected speech. While the Complaint pleads facts regarding adverse employment actions directed at Switzer and Chircop, it does not identify any City rule, ordinance, or directive requiring or authorizing these adverse actions. Rather, it attributes them to one individual, Chief Dandridge, who allegedly showed "animus" towards Local 2020 and its activities, with only a conclusory allegation that the actions "represent official policy." (FAC ¶¶ 15, 33)

Rather than citing to a particular policy, Plaintiffs use an inference from the fact that "someone with authority" acted; therefore, they claim it must constitute "official policy." (FAC ¶33) Reverse logic aside, this purported inference ignores the *Monell* standard for a "final decision maker"—and, as noted in Part IV below, Chief

Dandridge was not a final decision maker as to Chircop.[7]

Neither does the Complaint plead any well-settled practice or pattern of similar incidents sufficient to support municipal liability for Plaintiffs' section 1983 claims under *Monell*. Plaintiffs' supposed constitutional impairments arise from individual acts of discipline, and the Complaint does not allege a widespread custom or practice of Chief Dandridge or the City disciplining or terminating other employees for political speech. Instead, Plaintiffs allege isolated, sporadic comments and actions by Chief Dandridge and other City officials, including criticism of union advocacy, questioning promotional candidates about "whose side" they were on, accusations of dishonesty by unnamed City Council members, and unspecified "additional activities" Plaintiffs could not be bothered to enumerate or describe. (Comp. ¶¶ 18–21, 34.) At most, this purported conduct indicates a strained relationship between the City and the firefighters' collective bargaining unit—not the permanent or well-settled custom necessary to sustain a claim against either Defendant under *Monell* doctrine.

### D. Plaintiff Chircop Cannot Rely Upon a "Municipal Final Decision Maker" Analysis When he had a Right to Appeal to the City Manager and Choose to Forego that Appeal.

Municipal liability under *Monell* arises only when the challenged action is taken by an official who possesses final policymaking authority for the municipality. (*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).) The mere fact that an official has discretion to make certain decisions does not transform that official into a final policymaker; rather, the official's decision constitutes "final" municipal policy only when it is unreviewable and not constrained by the policies or oversight of superior officials. (*Coming Up, Inc. v. City & County of San Francisco,* 830 F. Supp. 1302

---

[7] As to Switzer, the Chief did make the determination that Switzer had failed to demonstrate sufficient merit to transition from a probationary status to a full-time status. (FAC ¶26). But that was not a policy tied to Switzer's speech at the Santa Maria Democratic club—Switzer made no such speech. (FAC ¶23 ("Plaintiff SWITZER did not utter a single word during the event. . .")

(N.D. Cal. 1993), *reconsideration granted in part* 857 F. Supp. 711 (N.D. Cal. 1994).)

The Ninth Circuit has underscored this principle, holding that a fire chief's authority to hire and fire employees did not, by itself, establish municipal liability because the chief was not responsible for setting the City's employment policy. (*Gillette v. Delmore,* 979 F.2d 1342 (1992).) The court explained that municipal liability attaches only where the official's decision represents a deliberate policy choice by the municipality's authorized policymakers. (*Id.*) Moreover, when a subordinate's discretionary decisions are subject to review, municipal liability arises only if the authorized policymaker approves or ratifies both the decision and its basis. (*City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).)

The City Manager—not Chief Dandridge—holds authority to review and decide appeals of disciplinary decisions for employees such as Chircop. The "Final Notice of Suspension" issued to Chircop regarding his suspension informed Chircop of his right to appeal Dandridge's decision to uphold the suspension. (**RJN Exhibit 5**).[8] The Notice indicated that Chircop may request an appeal to the City Manager within 15 days, and that failure to do so would constitute a waiver of the right to an appeal. (*Id.*)  Chircop did not request an appeal, thereby waiving his right to appeal Dandridge's decision to impose discipline.

### E.    Plaintiffs' So-called "Supplemental" State Law Claims Should be Dismissed

Plaintiffs allege three state law violations for which they seek pendent jurisdiction. Given that the federal (Section 1983) claim should be dismissed for the reasons given above, the pendent state claims should be dismissed.  Alternatively, we review each of those claims on the merits and demonstrate why they should be dismissed.

---

[8] Plaintiffs refer to the Notice of Intent to Discipline in their Complaint but failed to attach the notice to the Complaint.  (Comp. ¶29.)  The City requests judicial notice of the document, as courts may consider documents incorporated into a complaint by reference to said document.  (*See Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp.2d 121 (E.D.N.Y. 2000).)

1.     *Claims for Violation of Cal. Labor Code Sections 1101 and 1102*

Plaintiffs in their second cause of action allege violation of two separate Labor Code provisions, beginning with Section 1001. (Cal Labor Code §1101 (2025)("No employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office. (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees."). Plaintiffs now direct this claim only against the City, recognizing that Chief Dandridge cannot be deemed an "employer" for purposes of this claim. Nonetheless, Plaintiffs' reliance on this provision is still flawed—fatally so.  They cite to no "rule, regulation, or policy" of the City of Santa Maria that so directs its employees. Instead, Plaintiffs allege in conclusory fashion that Defendants violated this section by "adopting and/or enforcing rules and policies…that "*as applied to Plaintiffs*" impacted [Plaintiffs] association with Local 2020 and its advocacy efforts. (FAC ¶40) They cite, however, no such rule, regulation or policy of the City that purports to limit Local 2020 or its advocacy efforts.

Plaintiffs alternatively invoke, in the same cause of action, allegations related to Cal. Labor Code section 1102. (Cal. Labor Code §1102 (2025) ("No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.").) Once again, Plaintiffs singularly omit any factual allegation of a "threat of discharge" or "loss of employment" made by the City to either Switzer or Chircop in an effort to influence any specific political activity.  As to the June 20, 2024 "presentation" to the Democratic Club, neither individual alleges any threat by the City prior to that event in an effort to scuttle it. (Comp. ¶¶23-25.)  Those claims are not made and Plaintiffs efforts to invoke section 1102 of the California Labor Code go up in smoke.

With another "puff," Plaintiffs' claims for a remedy including "expungement of adverse personnel records for both Plaintiffs" (FAC ¶43) similarly vaporize. Plaintiffs allege that in addition to "damages," they are entitled to an equitable order requiring the City to expunge public records. They cite no authority for such an "equitable order," nor do they seek a writ of mandate in state court to compel such expungement.

### 2. Claims of Retaliation by the City under Cal. Labor Code Section 98.6

In their second state law claim (third cause of action), Plaintiffs invoke the statutory provisions of Labor Code Section 98.6. Subpart (a) of that Section provides that:

> a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to their rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that they are owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of themselves or others of any rights afforded them.

Cal. Labor Code Sec. 98.6 (2025).

To the extent that Section 98.6 prohibits conduct contained in Section 1101 or Section 1102 of the Labor Code, then, as explained above, Plaintiffs have failed to allege any violation of such a separate section. To the extent that Section 98.6 separately prohibits retaliation for claims made to the Labor Commission, or alleged unpaid wages, or potential testimony before a labor board, Plaintiffs' allegations again

fall short.  That is, neither Switzer nor Chircop allege that they were about to testify, had filed a complaint to the Labor Commissioner, or undertook any other administrative action *before* their adverse action. (FAC ¶¶25-28 (alleging adverse employment actions took place on January 9, 2025).)  Indeed, to the contrary, Plaintiffs allege that they have *subsequently* filed Unfair Labor Charges with the California Public Employment Relations Board. (FAC ¶10.)

Whatever else might be said, Plaintiffs cannot make out a claim of retaliation as to actions taken *after* the City imposed adverse employment actions.

> 3.    *Claims of Violations of against City as to Cal. Labor Code Sec. 232.5*

Plaintiffs in their fourth cause of action allege that the City violated California Labor Code section 232.5.  That section reads in pertinent part:

> No employer may do any of the following:
>
> (a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions.
>
> (b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions.
>
> (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.
>
> (d) [INTENTIONALLY omitted].

First, we again measure the Plaintiffs' allegations against the Gold Standard—in this case, the statutory language.  Plaintiffs' allegations fail to meet that standard because:

*Plaintiffs do not allege that the City, as a "condition of employment," required that a firefighter refrain from discussing working conditions. (Cal. Labor Code Sec. 235.5(a).)

*Plaintiffs do not allege that the City required either of them to sign "a waiver

or other document" purporting to deny them the right to disclose working conditions. (Cal. Labor Code Sec. 235.5(b).)

> \* Plaintiffs claim that they were "publicly disclosing information regarding unsafe, unlawful, or otherwise concerning working conditions at Defendants' [sic-Defendant's] workplace" (Comp. ¶53) fails for two reasons:

> \*\*First, as to Plaintiff Switzer, he by his own admission uttered "not one word" at the presentation to the Democratic Club on June 20, 2024. (Comp. ¶25.) It's hard to "publicly disclose information" about "working conditions" when you say not one word.

> \*\*Second, as to Plaintiff Chircop, although he made a "presentation," his claim is barred as a matter of law. Chircop did not "disclose" "working conditions" at the Fire Department of the City. Rather, according to his own allegations, he merely presented a public relations discussion of City "mutual-aid and Incident Command System (ICS) protocols. (FAC ¶21.) "Nothing in the presentation was out of the ordinary. " (FAC ¶22). The District Court in *Lupo* exhaustively reviewed the meaning of the key statutory term "working conditions." The Court there reviewed both a summary in an unpublished California Court of Appeal decision and in portions of the legislative history for Section 232.5. (*Lupo, supra,* 242 F. Supp. 3d at 1030-1031.) After canvassing these sources, the Court initially quoted from the unreported California Court of Appeal case, *Massey v. Thrifty Payless, Inc.* (2014 WL 2901377 (Cal. Ct. App. June 27, 2014)) to the effect that: "Working conditions are those conditions determined by the employer as a condition of employment. For example, one must wear a blue tie." The District Court concluded that one portion of the definition of the term "working conditions" was straightforward and would guide it: "Working conditions are those conditions determined by the employer as a condition of employment." (*Id.)*

> In this case, Chircop does not allege that his "presentation" to Democratic Club of Santa Maria Valley was a discussion of working conditions such as the requirement that one wear a firefighter uniform when on duty. *Au contraire*, Chircop alleges that

he routinely participates in such presentations, but nowhere alleges this particular presentation dealt with "working conditions" as used in the statute. (FAC ¶21.) This difference is fatal to Chircop's claims that he was later disciplined for making such a presentation—it was not part of his "working conditions" and therefore not a cognizable claim under Labor Code Section 232.5.

## IV. THE MOTION TO STRIKE PUNITIVE DAMAGE ALLEGATIONS SHOULD BE GRANTED

In an apparent afterthought, Plaintiffs toss a claim of punitive damages into the last paragraph of the First Cause of Action, alleging in pertinent part that: "Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights… Punitive damages are sought against the individual defendants [sic-defendant], according to proof." (FAC ¶35:16-20).

This gratuitous allegation should be stricken to avoid undue expense and time resulting from, e.g., Plaintiffs' attempts to investigate the Chief's net worth or other measure of his assets. It is an unfounded allegation coming at the end of a simple allegation of statutory wrongdoing in which a municipal entity (such as the City) and an agent of the City (such as Dandridge) are simply not responsible for as a matter of law. *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271(1981) ("In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of §1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.")

One cannot base a claim for punitive damages against a party who is simply not liable under the underlying statute. This justifies the motion to strike Paragraph 35 of the FAC and to also strike the word "exemplary" in Section 1 of Plaintiffs' prayer for relief.

Nor can Plaintiffs claim exemplary damages against Chief Dandridge based on their First Cause of Action under Section 1983.  They have alleged that the Chief acted within the course and scope of his duty. (Comp. ¶8.)  Under Section 1983, a municipal official is deemed to be part of the municipal entity. (*Kentucky v. Graham, supra,* 473 U.S. 159 (1985).) Therefore, on the face of Plaintiffs' allegations, Chief Dandridge is immune from personal liability for exemplary damages under Section 1983.

## V.    CONCLUSION

For these reasons, the City and Fire Chief Dandridge request that the Court *grant* the motion to dismiss and *order* that the dismissal be with prejudice.  To the extent that the Court allows some re-pleading of the First Cause of Action, Plaintiffs' claim for punitive damages as to "the individual defendants" [sic] should be stricken without leave to replead.

DATED: January 16, 2026

ALESHIRE & WYNDER, LLP
NORMAN A. DUPONT
CODY S. PARKER
COLIN P. RYAN

By: _____
NORMAN A. DUPONT
Attorneys for Defendants,
CITY OF SANTA MARIA and
BRADLEY DANDRIDGE