1  Michael McGill, SBN 231613
   mmcgill@ferronelawgroup.com
2  Derek Thompson, SBN 350736
   dthompson@ferronelawgroup.com
3  FERRONE LAW GROUP
   4333 Park Terrace Drive, Suite 200
4  Westlake Village, CA  91361
   Telephone: (805) 373-5900
5  Facsimile:  (818) 874-1382

6  Attorneys for Plaintiffs,
   TRAVIS SWITZER and MATTHEW CHIRCOP
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 TRAVIS SWITZER and MATTHEW         Case No.: 2:25-cv-010716-ODW-AJR
   CHIRCOP,
12                                    *Honorable Judge Otis D. Wright II*
                     Plaintiffs,
13                                    **PLAINTIFFS' OPPOSITION TO
           vs.                        DEFENDANTS' (CITY OF SANTA
14                                    MARIA AND BRADLEY
   CITY OF SANTA MARIA; BRADLEY       DANDRIDGE'S) MOTION TO
15 DANDRIDGE, individually and as Fire DISMISS FIRST AMENDED
   Chief of the City of Santa Maria; and COMPLAINT PURSUANT TO
16 DOES 1–10,                         RULE 12(f) AND MOTION TO
17                                    STRIKE; MEMORANDUM OF
                     Defendants.      POINTS AND AUTHORITIES**
18
19                                    DATE: February 23. 2025
20                                    TIME: 1:30 P.M.
21                                    COURTROOM: 5D
22

23         Plaintiffs submit this Opposition to the Motion to Dismiss filed by

24 Defendant City of Santa Maria and Defendant Bradley Dandridge. Plaintiffs

25 contend that their First Amended Complaint does in fact allege sufficient facts to a

26 state cause of action against Defendants therefore, The Court should deny

27 Defendant's Motion to Dismiss.

28 ///

                              1

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................7

II.    STATEMENT OF ALLEGATIONS .................................................7

   A. Plaintiffs Speech Regarding Matters of Public Concern ..................8

   B. Defendants Exhibited Clear Animus Towards Plaintiffs Speech ......9

   C. The City's Pretextual Rational for its Adverse Actions Against
      Plaintiffs Were Routine Conditions of Employment ........................10

III.   STANDARD OF REVIEW...................................................11

IV.    ARGUMENT ...............................................................13

   A. Plaintiffs Established a Claim for Deprivation of First Amendment
      Rights Under Section 1983 ........................................................13

      i.    Plaintiffs' Alleged Protected Speech Is Not Based Solely On the
            "Public Education Event" and Was A Matter of Public Concern 13

      ii.   Plaintiffs Were Speaking In Their Capacity As A Private Citizen 15

      iii.  Defendants Do Not Challenge That Plaintiffs' Protected Speech
            Was a Substantial or Motivating Factor in the Adverse
            Employment Actions ................................................................18

   B. Plaintiffs' Claims for Relief Alleges Sufficient Facts To Support An
      Unconstitutional Policy, Custom, Or Decision................................18

      i.    Chief Dandridge Has Final Decisionmaking Authority .............19

      ii.   Plaintiff Chircop Is Not Required To Appeal His Suspension ...21

   C. Plaintiffs Have Met Their Burden for Each Supplemental Claim.....22

      i.    Plaintiffs Engaged In Protected Activity Through
            Communication With The Public Under California Labor Code §
            1101 and 1102 ......................................................................22

      ii.   Plaintiffs Were Disciplines For Engaging in Protected Activity
            Under Labor Code § 232.5........................................................24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

iii.    Plaintiffs Were Retaliated Against After Engaging In Protected Activity Under California Labor Code § 98.6 ............................25

D. Plaintiffs Are Entitled to Punitive Damages Against Defendant Dandridge.........................................................................26

V.    PLAINTIFF REQUESTS LEAVE TO AMEND, IF NECESSARY ......27

VI.    CONCLUSION ......................................................................27

3

# TABLE OF AUTHORITIES

<u>Cases</u>

*Atchison, Topeka & Santa Fe Ry. v. Buell*
480 U.S. 557 (1987) ........................................................................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........................................................................12

*Avenmarg v. Humboldt Cty.*
No. 19-CV-05891-RMI, 2020 WL 4464876(N.D. Cal. Aug. 4, 2020)......19, 20

*Balistreri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1990)...........................................................11

*Barone v. City of Springfield*
902 F.3d 1091 (9th Cir. 2018)..........................................................14

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007).................................................................11, 12

*Burch v. City of Chubbuck*
146 F.4th 822 (9th Cir. 2025) ..........................................................16

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996)..............................................................12

*City of Newport v. Fact Concerts, Inc.*
453 U.S. 247 (1981)........................................................................26

*Conley v. Gibson*
355 U.S. 41 (1957)..........................................................................12

*Connick v. Myers*
461 U.S. 138 (1983).................................................................14, 16

*Cortez v. Cty. of Los Angeles*
294 F.3d 1186 (9th Cir. 2002)..........................................................19

*Crawford-El v. Britton*
523 U.S. 574 (1998).........................................................................13

4

*Dahlia v. Rodriquez*
735 F.3d 1066 (9th Cir. 2013)...................................................................16

*Eng v. Cooley*
552 F.3d 1062 (9th Cir. 2009)...................................................................13

*Epos Tech.*
636 F. Supp.2d 57 (D.D.C. 2009)...............................................................12

*Felder v. Casey*
487 U.S. 131 (1988)...................................................................................21

*Fort v. Civil Service Commission*
61 Cal.2d 331 [38 Cal.Rptr. 625, 329 P.2d 385] (1964) ..........................23

*Garcetti v. Ceballos*
547 U.S. 410 (2006)............................................................................15, 16

*Gillette v. Delmore*
979 F.2d 1342 (9th Cir. 1992)...................................................................19

*Greisen v. Hanken*
925 F.3d 1097 (2019)................................................................................14

*Grinzi v. San Diego Hospice Corp.*
120 Cal.App.4th 72 (2004).......................................................................25

*Gwin v. Target Corp.*
No. 12-05995 JCS, 2013 WL 5424711, at *8 (N.D. Cal. Sept. 27, 2013)......25

*Hartman v. Moore*
547 U.S. 250 (2006)..................................................................................13

*Jett v. Dallas Independent School Dist.*
491 U.S. 701 (1989)..................................................................................19

*Johnon v. Multnomah County*
48 F.3d 420 (9th Cir. 1995).......................................................................14

*Karl v. City of Mountlake Terrace*
678 F.3d 1062 (9th Cir. 2012)...................................................................14

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Kentucky v. Graham*

473 U.S. 159 (1985)....................................................................................26

*Knick v. Twp. of Scott*

588 U.S. 180 (2019)....................................................................................21

*Lockheed Aircraft Corp. v. Superior Court*

28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701 (1946)................................22, 23

*Massey v. Thrifty Payless, Inc.*

No. G047734, 2014 WL 2901377, (Cal. Ct. App. June 27, 2014)................25

*McMillian v. Monroe Cty.*

520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ...................................19

*Monell v. Dept. of Soc. Servs.*

436 U.S. 658 (1978).................................................................................8, 18

*Mt. Healthy City Bd. of Ed. v. Doyle*

429 U.S. 274 (1977)....................................................................................13

*Patsy v. Board of Regents*

457 U.S. 496 (1982)....................................................................................21

*Pembaur v. City of Cincinnati*

475 U.S. 469 (1986)....................................................................................20

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*

546 F.3d 1121 (9th Cir. 2008).....................................................................16

*Scheuer v. Rhodes*

416 U.S. 232 (1974)....................................................................................12

*Scott v. Donald*

165 U.S. 58 (1897)......................................................................................26

*Smith v. Wade*

461 U.S. 30 (1983)......................................................................................26

*St. Louis v. Praprotnik*

485 U.S. 112 (1988)....................................................................................19

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Swierkiewicz v. Sorema N.A.*

534 U.S. 506 (2002)..............................................................................12

*Ulrich v. City & County of San Francisco*

308 F.3d 968 (9th Cir. 2002)................................................................15

*United States ex rel. Lupo v. Quality Assurance Servs., Inc.*

242 F. Supp. 3d 1020 (S.D. Cal. 2017)..........................................24, 25

*Zografos v. City & Cty. of San Francisco*

No. C-05-3881-PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006)...19

Federal Statutes

42 U.S.C. § 1983 ............................................................................18, 19

Fed. R. Civ. Proc. § 12(b)(6) .........................................................11, 12

Fed. R. Civ. Proc. § 8(a)(2)...................................................................12

Fed. R. Civ. Proc. § 15(a)(2).................................................................27

State Statutes and Regulations

Government Code § 38611.....................................................................20

Government Code § 11506.....................................................................22

Labor Code § 1101.................................................................................22

Labor Code § 1102..........................................................................22, 23

Labor Code § 232.5(c)...........................................................................24

Labor Code § 98.6...........................................................................25, 26

Labor Code § 98.6(a).............................................................................25

Santa Maria Municipal Code § 2-3.05..................................................21

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Defendants' motion to dismiss is entirely predicated on their mistaken belief that the pretextual reason for Plaintiff Switzer and Plaintiff Chircop's adverse employment actions is the only "speech" this Court should consider when deciding on whether each Plaintiff engaged in constitutionally protected speech. Defendants completely ignore the constitutionally protected speech Plaintiffs engaged in previously which is the real reason for Plaintiffs adverse actions.   Plaintiff's First Amended Complaint ("FAC") could not be clearer that Plaintiff's engaged in a distinct pattern of protected activities in support of the rank-and-file members of the City of Santa Maria Fire Department.

Defendants in their misguided arguments concede much of the elements related to Plaintiffs' retaliation claims.   Defendants only challenge Plaintiff's section 1983 claim, by asserting (1) there was no policy, practice or custom, under *Monell*, even with clear allegations of anti-union rhetoric from the Defendants; (2) that Defendant Dandridge is not a final policy maker, even though authority of the Fire Department has been unmistakably delegated to the Fire Chief; and (3) Plaintiff Chircop, did not appeal his adverse action, even in light of there being no requirement to exhaust administrative remedies with the City. At each turn the Defendants are entirely confused as to what Plaintiff has actually alleged. It seems as though Defendant's go at great lengths to avoid the clear and simple allegations put forth in Plaintiffs complaint showing a consistent pattern of speech resulting in Plaintiffs adverse employment actions at the hands of Defendants after their mismanagement of the Fire Department has been put in public view by Plaintiffs.

## II.    STATEMENT OF ALLEGATIONS

### A. Plaintiffs Speech Regarding Matters of Public Concern

In the FAC, Plaintiffs alleges that Defendant, City of Santa Maria ("City"), and the Santa Maria Firefighters Local 2020 ("Local 2020") were engaged in

8

negotiations over a successor Memorandum of Understanding ("MOU") in or around December 2023. (FAC ¶11.) Both Plaintiffs Switzer and Chircop were members of Local 2020, with Plaintiff Chircop serving as its president. (FAC ¶12-14.) The FAC provides that during this period Plaintiffs both engaged in various protected speech activities in support of their union, including (1) *speaking at City Council meetings*, (2) *door to door canvassing*, and (3) *picketing* at City Hall. Each of these activities were clearly and unmistakably speech. These are just a few of the protected activities the union and individual members were engaged in for support of a successor MOU that provided for fair wages and working conditions. (FAC ¶12.)

Much of the protected speech from Local 2020 was centered around the Fire Departments' inability to secure adequate staffing to help protect the city's citizens. (FAC ¶12.) The City was unable to attract high quality candidates due to subpar compensation, leading to dangerous public safety outcomes for the City of Santa Maria's residents. (FAC ¶11-12.) The Plaintiff's participation in these protected activities, with their speech advocating for the residents of Santa Maria and their Fire Department personnel, was well known to the Defendants. (FAC ¶11-12.)

**B. Defendants Exhibited Clear Animus Towards Plaintiffs Speech**

The Defendants expressed clear disdain for the union due to the Plaintiff's speech advocating for their members and safety for the community. Plaintiffs protected speech, pointing out Defendants' failures operating the fire department, caused discontent and aggravation to Defendant. (FAC ¶15.)

On at least one occasion, Defendant Dandridge, in or around February 2024, showed the Local 2020 members a photo of off-duty firefighters holding sings in front of city hall that said, "Fair pay for Firefighters." (FAC ¶2.) This was clearly to show Local 2020 members they would face discipline if they continued with their protected activities. (FAC ¶16.) On or about September 13, 2024, Defendant Dandridge corned a firefighter and tried to intimidate them into leaving the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Department. Plaintiff Chircop attempted to address this issue with Defendant Dandridge.  Defendant ignoring the issue at hand, Defendant continued to lament the fact that Local 2020 continues to go in front of the City and declare the firefighters are overworked. Defendant Dandridge has made it clear that he is anti-union by continuing to ask "whose side" members are on, either management or union. (FAC ¶18.)

On January 28, 2025, Defendant Dandridge stated that he would not utilize any policy that benefited Local 2020 or their members. (FAC ¶19.) The hostile relationship between union members and City officials only intensified when Local 2020 brought two Unfair Labor Charges with the Public Employment Relations Board in 2024 against the City. (FAC ¶20.)

## C. The City's Pretextual Rational for its Adverse Actions Against Plaintiffs Were Routine Conditions of Employment

As the fiery relationship between the City and Local 2020 continued to burn, the City and Defendant Dandridge were looking for any opportunity to stifle the opposition to the City and Fire Department leadership. The City found their scapegoat on June 20, 2024. On this day Plaintiff Chircop, being the on-duty Captain, was scheduled to lead a routine public education presentation on the City's mutual aid and Incident Command Systems (ICS) protocols. (FAC ¶21.) The presentation was to be performed for the Democratic Club of Santa Maria Valley. It was performed according to policy and like other members of the Fire Department performed at any public education event. (FAC ¶21.) As the on-duty Captain, Plaintiff Chircop ordered his on-duty engineer, Mathew Lewis, and his on-duty firefighter, Plaintiff Switzer to attend, as was typical of any other public education event. (FAC ¶22.) The public education event went as any other presentation would have, and Plaintiff Switzer did not speak as he was only in attendance on orders of his fire captain. (FAC ¶23.) The routine protocol was to send an entire engine crew to said events.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Thereafter, on July 4, 2024, seeing his opportunity for reprisal, Defendant Dandridge summoned Plaintiff Switzer for an interrogation regarding the public education event and denied Plaintiff's request for union representation. (FAC ¶24.) Thereafter, Plaintiff Switzer was terminated from his employment with the City without any cause or explanation on January 9, 2025. When asked why Plaintiff Switzer was terminated, Defendant Dandridge responded with "I don't need to answer that." (FAC ¶26.)

On July 4, 2024, as well, Plaintiff Chircop received notice of discipline for violating the City's political activity policy despite the fact that neither Chircop nor his crew engaged in any on-duty political activity on June 20, 2024.  Chircop was then given two 24-hour shift suspensions without pay. (FAC ¶27.)

Plaintiffs were subject to adverse actions for simply engaging in lawful and constitutionally protected activities. The Plaintiffs' complaint shows a clear pattern of animus toward Local 2020 and its members, directly leading to Plaintiff Chircop's suspension and Plaintiff Switzer's termination.  The Defendants actions were done for no other reason but to chill the constitutionally protected, free expression of Plaintiffs and other members of Local 2020.

## III.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. A court may only dismiss of an action under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' and the Supreme

Court has explained that a complaint need not allege specific facts and need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"); *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a rule 12(b)(6) motion the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face).

A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

The U.S. Supreme Court has stated: "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Rather, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

///
///
///
///

12

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# IV.    ARGUMENT

## A. Plaintiffs Established a Claim for Deprivation of First Amendment Rights Under Section 1983

The First Amendment prohibits laws "abridging the freedom of speech." "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore,* 547 U.S. 250, 256 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton,* 523 U.S. 574, 593 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 283-284 (1977).)

A First Amendment retaliation claim turns on a sequential five-step series of questions: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009).

The plaintiff must meet the first three elements of the test. Defendants only argue that Plaintiffs do not meet the first two prongs of this analysis and concede all other points.

### i. Plaintiffs' Alleged Protected Speech Is Not Based Solely On the "Public Education Event" and Was A Matter of Public Concern

Defendants solely argue that Plaintiffs' only protected speech was the Public Education event held by the Fire Department for the Democratic Club of Santa

13

Maria Valley. In doing so, Defendants fail to address the entirety of Plaintiffs' alleged protected speech.

In addition, FAC plainly asserts that the subject of Plaintiffs' speech was a matter of public concern. The speech from Plaintiffs was centered around the Fire Departments inability to secure adequate staffing to protect its citizens in the face of an emergency. This was directly related to the working conditions and fair wages subject to the parties MOU. The inability to attract high quality candidates due to inadequate compensation and working conditions was squarely putting public safety at risk within the bounds of the City of Santa Maria. Plaintiffs' activities were also well known to Defendants.

As alleged, Plaintiffs spoke at City council meetings, engaged in door-to-door canvassing and at picketing events. Plaintiff does not argue that speech related to the public education event is the speech at issue in the FAC no matter how much Defendant would like that to be so.

However, even if Defendants attempt to argue the actual speech at issue in the FAC is not of public concern it is settled that "speech need not be entirely about matters of public concern, but it must 'substantially involve' such matters." *Greisen v. Hanken,* 925 F.3d 1097, 1109 (2019); citing *Johnon v. Multnomah County,* 48 F.3d 420, 425 (9th Cir. 1995).

The speech at issue here that Plaintiffs were involved in is the type of speech that the first amendment is set to protect. "[S]peech warrants protection when it 'seek[s] to bring to light actual or potential wrongdoing or breach of public trust.'" *Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018) (quoting *Connick v. Myers,* 461 U.S. 138, 148 (1983)). "Whether employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. "[T]he content of the speech is generally the most important." *Karl v. City of Mountlake Terrace,* 678 F.3d 1062 (9th Cir. 2012). "We focus on the *point* of the

14

speech, looking to such factors as the employee's motivation and the audience chosen for the speech." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citation and internal quotation marks omitted).

Defendants do not spend a scintilla of effort into arguing that picketing, door-to-door canvassing or speaking at City council meeting is speech somehow not protected by the first amendment. That is because Defendants are fully aware those activities and speech are protected which is why so much effort is spent trying to divert this Courts' attention to the public education event rather than the real speech at issue.

The speech engaged in by both Plaintiffs was of significant public concern. Plaintiffs Chircop and Switzer were vocally advocating to members of the public and residents of the City about issues that could lead to dangerous public safety outcomes for the residents. As "the content of the speech is generally the most important," speech designed to protect the safety of residents is a public concern.

### ii. Plaintiffs Were Speaking In Their Capacity As A Private Citizen

Defendants argue that Plaintiff Chircop's speech was only during the course of his employment. First, this argument is predicated in assuming Plaintiffs only claimed protected speech was during the public education event, which Plaintiffs will reiterate is not subject to their FAC.

Second, public employees do not surrender all their First Amendment rights because of their employment; the First Amendment protected public employees when speaking as a citizen addressing matters of public concern. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). "[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Oreille Sch. Dist. No. 84,* 546 F.3d 1121, 1127 n.2 (9th Cir. 2008).

In evaluating whether the Plaintiffs speech was made as a public employee or as a private citizen, the Ninth Circuit looks beyond his formal job description and evaluates the three factors set forth in *Dahlia v. Rodriquez,* 735 F.3d 1066, 1074-1076 (9th Cir. 2013) (en banc): (1) "whether or not the employee confined his communications to his chain of command"; (2) examining the "subject matter of the communication"; and (3) asking whether the employer spoke "in direct contravention to his supervisor's orders." *Burch v. City of Chubbuck,* 146 F.4th 822 (9th Cir. 2025). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti, supra*, 547 U.S. at 419; (citing *Connick v. Myers,* 461 U.S. 138, 147 (1983).)

As acknowledged by the Defendants, Plaintiffs Chircop and Switzer did not confine their protected speech to just the chain of command within the department. Defendants narrowly focus on just one instance of speech, the presentation to the Democratic Club of Santa Maria Valley. While it is alleged both Plaintiffs spoke while off duty several times, Defendants focus only on half of the facts alleged by Plaintiffs and conveniently ignore the factual allegations relating to the speech engaged in by Plaintiffs supporting Local 2020. Plaintiffs participated several times in protected speech while off duty to advocate for fair wages and working conditions of members at the Fire Department. Yet, Defendants only address on the presentation by Plaintiff Chircop while on duty. (FAC ¶11-13.) The protected speech of Plaintiffs while advocating to residents of the City through speech at City Council meetings, door-to-door canvassing, and picketing occurred while off duty. (FAC ¶12.) The speech Defendants failed to include was speech as a private citizen.

16

With regard to Defendant Switzer, Defendant conveniently focuses their entire argument on the allegation that Plaintiff did not speak at the June 20, 2024. Defendant failed to present any legal theory to address all other presented protected activity engaged in by the Plaintiff. Several verbal and non-expressive statements were alleged by Plaintiff as Plaintiff Switzer was a member of Local 2020 advocating for fair wages and working conditions for members. (FAC ¶11.) These protected statements included attending City Council meetings in solidarity with Local 2020 and door-to-door canvassing as a Local 2020 member. (FAC ¶12.) As Plaintiff Switzer engaged in these activities and spoke to residents of the City about the possible dangerous public safety outcomes (FAC ¶12-13), sufficient protected speech was established by Plaintiff Switzer.

Similarly, for Plaintiff Chircop, Defendant ignores the factual allegations plead by Plaintiff Chircop asserting protected speech and instead focuses on the one instance. Just as Plaintiff Switzer engaged in protected activities, Plaintiff Chircop was also a member of Local 2020 engaged in these protected activities seeking fair wages and working conditions for Department members. (FAC ¶11.) The activities also included speaking at City Council meetings, door-to-door canvassing, and picketing to advocate for staffing, adequate compensation, and possible dangerous public safety outcomes for residents of the City. (FAC ¶12.) Defendants attempt to assert only the presentation at the City of Santa Maria's Democratic Club was the "speech" Plaintiff is asserting is protected. This is incorrect and in opposition to the FAC concise language.

Defendants knew of Plaintiff Chircop's protected speech as he was the President of Local 2020 at this time and directly spoke with Defendant Dandridge and the City leadership on these issues. (FAC ¶13-14.) As Plaintiff Chircop engaged in these activities of speaking at City Council meetings, door-to-door canvassing,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

and picketing while off-duty, Plaintiff engaged in protected speech outside the scope of his position as Fire Captain, as alleged in the FAC.

### iii. Defendant's Do Not Challenge That Plaintiffs' Protected Speech Was a Substantial or Motivating Factor in the Adverse Employment Actions

Defendants do not argue that any of the protected speech was not a substantial or motivating factor in the adverse employment actions for Plaintiffs. This point is entirely conceded by Defendants. With this last piece, Plaintiffs have met their burden by showing a prima facia free speech retaliation claim under section 1983. Even if Defendants try to later assert that Plaintiffs speech was not a substantial motivating factor, the FAC has alleged specific facts showing a clear pattern of animus to link the adverse employment action to the Plaintiffs constitutionally protected speech.

## B. Plaintiffs' Claims for Relief Alleges Sufficient Facts To Support An Unconstitutional Policy, Custom, Or Decision

Local governing bodies can be sued directly under 42 U.S.C. § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690 (1978).

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Monell,* 436 U.S. at 694. Local governments "may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-691.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

The court must "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737 (1989). A municipality may be held liable under 42 U.S.C. § 1983 if the allegedly unconstitutional act was committed by an official high enough in the government so that his or her actions can be said to represent a government decision. *St. Louis v. Praprotnik,* 485 U.S. 112 (1988).

Defendants assert the termination of Plaintiff Switzer and suspension of Plaintiff Chircop were isolated instances yet ignore the pattern of Defendant Dandridge consistently suppressing the off-duty actions of Local 2020 members. Defendants fail to mention Defendant Dandridge's threat of future discipline for picketing, intimidating firefighters to work for different agencies, interrogating members about supporting Local 2020 in promotional interviews, not enacting policies which support Local 2020, and the adverse actions of termination and suspension. (FAC ¶ 16-19.)

### i.    Chief Dandridge Has Final Decisionmaking Authority

"Whether a particular official has final policy-making authority is a question of state law," determined by the judge, not the jury. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992); *Zografos v. City & Cty. of San Francisco*, No. C-05-3881-PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006). The court must first "identify the particular area or issue for which the official is alleged to be the final policymaker." *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).) Next, the court must "analyze state law to discern the official's actual function with respect to that particular area or issue." *Id*. In doing so, courts look to state laws, county charters and codes, and city charters. *See Avenmarg v.*

1
2
*Humboldt Cty.*, No. 19-CV-05891-RMI, 2020 WL 4464876, at \*7 (N.D. Cal. Aug. 4, 2020) (collecting cases).

3
4
5
6
7
8
9
10
   Contrary to the Defendants assertions the Supreme Court has acknowledged municipal liability may be imposed for a *single decision* or action by a municipal policymaker when the decision maker possesses "final authority" to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). Whether an official has final policymaking authority is a question of state law. *Id.* at 483. Under California Government Code § 38611, the City's fire department is under control of the Fire Chief.

11
12
13
14
15
16
17
18
   Upon notice by Defendant Fire Chief Dandridge, Plaintiff Chircop was issued a suspension without pay for two (2) 24-hour shifts for the dates of March 21 and March 22, 2025. (Defendants RJN Ex. 5.) The Final Notice of Suspension provided to Plaintiff Chircop by Defendant Dandridge states "The Fire Chief and/or appointed authority may take disciplinary action against employees as specified herein provided that the rules and regulations prescribed herein, or as defined by department regulations, are followed and that any full-time employee has the right of appeal." (Defendants RJN Ex. 5.)

19
20
21
22
23
24
25
26
27
28
   Defendants assert that Chief Dandridge is not a "final decision maker" for the suspension issued to Plaintiff Chircop. Yet, City policy provides for something different. The grievance appeal procedures permit "any appeal of the department heads decision [to] be made in writing to the City Manager within not more than ten (10) calendar days following the date the employee is informed of the department heads decision". (Defendants RJN Ex. 7) Chapter 13.1.4.4 of the MOU provides a clear exception, "this procedure is not to be used in disciplinary cases of oral reprimand, written reprimand, punitive transfer, reduction in pay, demotion, *suspension*, or termination." (Defendants RJN Ex. 7, emphasis added.) Defendants' contradict the City's own policy as any appeal to the City Manager is not applicable

20

to Plaintiff Chircop for his suspension. In fact, the Final Notice of Suspension issued by Defendant Dandridge supports him having the sole decision to suspend Plaintiff Chircop as the notice states "Fire Chief ... may take disciplinary action against employees." (Defendants RJN Ex. 5.) Defendant Dandridge is unequivocally the decision maker, not the City Manager.

The Court also looks to state laws, county charters and codes, and city charters for municipal liability. The City of Santa Maria's own Municipal Code section 2-3.05 establishes Defendant Dandridge as the decision maker as "[t]he City Manager may from time to time prepare and publish standards concerning appointment, suspension or removal of employees of any particular department and *shall delegate to the head of such a department* the ability to appoint, suspend or remove subordinate employees in such department pursuant to the standards so published." (Emphasis added.) Defendant Dandridge, as Fire Chief, is the department head for the City of Santa Maria's Fire Department and was delegated with final decision making authority suspend employees within his department.

### ii.    Plaintiff Chircop Is Not Required To Appeal His Suspension

Defendant attempts to invoke the "Municipal Final Decision Maker" doctrine as a red herring to lure this Court into "exhaustion requirements" that Plaintiff Chircop need not abide by.

The "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983." *Patsy v. Board of Regents,* 457 U.S. 496, 507 (1982). "[A]uthority does not extend so far as to permit States to place conditions on the vindication of a federal right." *Felder v. Casey,* 487 U.S. 131, 147 (1988). The Civil Rights Act of 1871 guarantees "a federal forum for claims of unconstitutional treatment at the hands of state officials" and not being required to exhaust state administrative remedies is "the settled rule." *Knick v. Twp. of Scott,* 588 U.S. 180 (2019).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

California Government Code § 11506 provides "[w]ithin 15 days after service of the accusation or District Statement of Reduction in Force, the respondent may file with the agency a notice of defense, or as applicable, notice of participation." This was relied on in the Final Notice of Suspension provided by Defendant Dandridge, as it states "[y]ou may request an appeal of your suspension by filing a Notice of Defense with the City Manager pursuant to Government Code § 11506 within fifteen (15) days of service of the Notice of Disciplinary Action." (Defendants RJN Ex. 5)

Defendants attempt to incorrectly shift the burden to Plaintiff Chircop to appeal his suspension. Although mentioned in the Final Notice of Suspension, Defendants reliance on Government Code § 11506 that Plaintiff Chircop "may request an appeal" and failure to appeal would constitute a waiver of the right to an appeal is inapplicable to Plaintiff Chircop's ability to bring a § 1983 claim. Plaintiff Chircop had no obligation to appeal the suspension issued by Defendant Dandridge. In fact, Chapter 13.1.4.4 of the City of Santa Maria Fire Fighters' Union Local 2020 MOU does not permit the grievance appeal to be used for "suspension." Plaintiff Chircop is not required to exhaust his administrative remedies and did not waive any right to appeal or bring a claim under § 1983. (Defendants RJN Ex. 7.)

**C. Plaintiffs Have Met Their Burden for Each Supplemental Claim**

    **i.  Plaintiffs Engaged In Protected Activity Through Communication With The Public Under California Labor Code § 1101 and 1102**

In this state, both statutes and judicial decisions have recognized the fundamental right of employees, in general, to engage in political activity without interference by employers. Lab. Code § 1101; *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486 [171 P.2d 21, 166 A.L.R. 701]. California Labor Code section 1101 states that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

participating in politics [or] (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Cal. Labor Code § 1101. Similarly, section 1102 states that "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." Cal. Lab. Code § 1102. These sections serve to protect "the fundamental right of employees in general to engage in political activity without interference by employers." *Fort v. Civil Service Commission* (1964) 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 329 P.2d 385]; see *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486 [171 P.2d 21, 166 A.L.R. 701].

Defendants make two arguments against California Labor Code §§ 1101 and 1102. First, Defendants claim that under Labor Code § 1101, the Plaintiffs' cite no "rule, regulation, or policy" of the City. However, as argued above in accordance with Plaintiffs' 1983 claims, the City and Defendant Dandridge did have a policy and practice against employees speaking out.  This policy was elucidated by Defendant Dandridge's assertion that members who continued to picket in front of the City would face discipline. (FAC ¶ 16.) Further, Defendant Dandridge continuously harassing members about "whose side" they were on shows a distinct policy against protected political activity outside of work. (FAC ¶ 18.)

Second, Defendant's argue under California Labor Code § 1102 that Plaintiffs fail to allege Defendants threatened discharge or loss of employment for following or failing to follow a particular course of political action or activity. This argument completely fails to consider Defendant Dandridge's conduct as argued under Labor Code § 1101. It further fails to look at the Defendant's actions in terminating Plaintiff Switzer. There were consistent and constant threats from Defendant Dandridge that if members acted in any fashion to oppose the City's political

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

positions, they would face adverse action, and those threats were carried out against both Plaintiffs.

### ii. Plaintiffs Were Disciplined For Engaging in Protected Activity Under Labor Code § 232.5

Under California Labor Code § 232.5(c), "[n]o employer may ... [d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions."

Thus, the conduct alleged in Plaintiffs FAC could not more perfectly fit the plain language of California Labor Code § 232.5(c). Defendants argue that this claim fails for two stated purposes: (1) Plaintiff Switzer did not speak at the June 20, 2024, Public education event; and (2) although Plaintiff Chircop did speak during the public education event, he did not disclose working conditions.

These arguments are both premised on the Defendants continued mistaken assertion that each Plaintiffs claims are totally reliant on speech from the June 20, 2024, public education event. As previously argued, the public education event was merely Defendants' pretextual reason for Plaintiffs' adverse employment actions. Plaintiffs asserted upfront in its complaint that they were subject to adverse employment actions for continuously engaging in protected speech for their union and for the working conditions related to their employment. (FAC ¶11-15.)

The Defendants take the remainder of their opposition to Plaintiffs' claim under Labor Code 232.5 to assert that Plaintiff Chircop's public education speech was not regarding working conditions as required by the Labor Code 232.5. To this point, we agree. However, it is alleged in Plaintiffs FAC that Plaintiffs were engaged in disclosing issues on fair wages, sub-par compensation, and the City's failure to attract high quality staffing, leading to extremely high turnover prior to their adverse actions. (FAC ¶11-12.) The cases which Defendants cite do not come to conclusion on what the term "working condition" means, even though it is cited several times in the Labor Code. *United States ex rel. Lupo v. Quality Assurance Servs., Inc.,* 242

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

F. Supp. 3d 1020, 1031 (S.D. Cal. 2017); see also *Massey v. Thrifty Payless, Inc.*,
No. G047734, 2014 WL 2901377, (Cal. Ct. App. June 27, 2014). However,
"working conditions are described as '(e.g., hours, workplace safety, benefits).'" *Id.*
The term working condition is intentionally vague as "defining working conditions
would be like defining work, each industry and profession requires various skills,
protocols, attire, etc." *Massey v. Thrifty Payless, Inc.*, No. G047734, 2014 WL
2901377, at 5 (Cal. Ct. App. June 27, 2014).

Defendants effort to argue nothing presented at the public education event
constituted a working condition. They again fail to address Plaintiffs' contention
that the picketing or door-to-door canvasing do  qualify as "working conditions." In
fact, essentially all of Plaintiff's protected speech addresses "working conditions".
It is clear this should not be a point of argument, which is most likely why the
Defendants ignore the vast majority of Plaintiffs' protected speech.

### iii. Plaintiffs Were Retaliated Against After Engaging In Protected Activity Under California Labor Code § 98.6

Section 98.6 prohibits an employer from retaliating against an employee
because the employee exercised rights afforded to them under the Labor Code. See
*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 87. "A person
shall not discharge an employee or in any manner discriminate, retaliate, or take
any adverse action against any employee … because of the exercise by the
employee … on behalf of himself, herself, or others of any rights afforded him or
her." Cal. Lab. Code § 98.6, subd. (a).

Labor Code 98.6 protects against terminations for the exercise of "any rights
protected by the labor code." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th
72, 87, 14 Cal. Rptr. 3d 893, 903–04 (2004); *See also Gwin v. Target Corp.*, No. 12-
05995 JCS, 2013 WL 5424711, at *8 (N.D. Cal. Sept. 27, 2013). Courts have found
that even when other statutes under the Labor Code provide remedy, remedies under
98.6 is an additional avenue for a claimant to seek remedy, so long as the statues in

which a claimant is basing liability under 98.6 does not provide exclusive remedy. *Id*.

**D. Plaintiffs Are Entitled to Punitive Damages Against Defendant Dandridge**

Plaintiff's FAC is clear that it is only seeking punitive damages from the individual Defendant in this case. The Defendants' ask this Court in a baseless assertion to strike the punitive damage request subject to Plaintiffs FAC. (FAC ¶35:16-20). The Defendant's cite to, *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271(1981), which only supports that a municipality is not subject to punitive damages. This is simply not a point of dispute, nor does the FAC request punitive damages from the Defendant City.

What is in dispute is that the Defendants seek to strike punitive damages for Defendant Dandridge. The Defendant's cite not a single statue, case, rule, or regulation, that suggests punitive damages cannot be brought against an individual defendant. Contrary to the Defendants assertions, it is well established by the Supreme Court that "individual public officers were liable for punitive damages for their misconduct on the same basis as other individual defendants." *Smith v. Wade*, 461 U.S. 30, 35–36 (1983); See also *Scott v. Donald*, 165 U.S. 58, 77–89 (1897) (punitive damages for constitutional tort). To claim punitive damages under a § 1983 claim a plaintiff must provide the defendant's conduct was shown to be motivated by evil motive or intent, or when it shows reckless or callous indifference to the federal protected rights of others. Id. at 1640.

Further, the single case, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), that Defendants have cited to suggest Defendant Dandridge cannot be liable for punitive damages states the exact opposite of what the Defendants are asserting. Footnote 13 of *Graham* specifically states "punitive damages are not available under § 1983 from a municipality... but are available in a suit against an official personally." *Kentucky v. Graham*, 473 U.S. 159, 171 n. 13 (1985).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

It cannot be disputed that punitive damages are available against individual defendants under § 1983. Plaintiffs are not claiming punitive damages from the Defendant City, only Defendant Dandridge. Therefore, Defendant's motion to strike should be denied.

## V.    PLAINTIFF REQUESTS LEAVE TO AMEND, IF NECESSARY

Generally, courts should grant leave to amend freely under Fed. R. Civ. P 15(a)(2). In the event that this Court is contemplating granting any part of the Defendants' motion, Plaintiff respectfully requests that they be allowed leave to amend to cure any deficiencies. Plaintiff understands the arguments brought in this motion, but believe that given the liberal pleading requirements under the federal rules, they have adequately pled their case. However, additional facts could be asserted, if the Court deems it necessary, to cure any deficiency.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated:  February 2, 2026                    Respectfully Submitted,
                                            FERRONE LAW GROUP


                                            _____
                                            Michael McGill
                                            Derek Thompson
                                            Matthew Chircop and Travis Switzer

27

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT