CITY ATTORNEY FOR THE CITY OF SANTA MARIA
THOMAS T. WATSON, State Bar No. 144457
  *twatson@cityofsantamaria.org*
204 E. Cook Street
Santa Maria, CA 93454
Telephone: (805) 925-0951
Facsimile: (805) 928-1275

ALESHIRE & WYNDER, LLP
NORMAN A. DUPONT, State Bar No. 85008
  *ndupont@awattorneys.com*
CODY S. PARKER, State Bar No. 359372
  *cparker@awattorneys.com*
COLIN P. RYAN, State Bar No. 365920
  *cryan@awattorneys.com*
3701 Wilshire Blvd., Suite 725
Los Angeles, California 90010
Telephone: (310) 527-6660
Facsimile: (949) 223-1180

Attorneys for Defendants
CITY OF SANTA MARIA and
BRADLEY DANDRIDGE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TRAVIS SWITZER and MATTHEW CHIRCOP,<br><br>           Plaintiffs,<br><br>     v.<br><br>CITY OF SANTA MARIA; BRADLEY DANDRIDGE, individually and as Fire Chief of the City of Santa Maria; and DOES 1-10,<br><br>           Defendants. | Case No. 2:25-cv-010716-ODW-AJR<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**<br><br>Date:          February 23, 2026<br>Time:          1:30 p.m.<br>Courtroom:   5D<br><br>Case Filed:  November 7, 2025 |

01157.0022 2087978.4

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ................................................................6

II. LEGAL ARGUMENT .....................................................................8

A. PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR CLAIMS REST ON GENERALIZED UNION ACTIVITY DISCONNECTED FROM THE DISCIPLINE AT ISSUE ..................................................8

1. Switzer Alleges No Protected Speech Known to or Relied Upon by Defendants............................................................................10

2. Plaintiff Chircop's Claims Collapse Because his Discipline Arose from On-Duty Conduct, Not Off-Duty Advocacy..........................................11

B. PLAINTIFFS' *MONELL* THEORY FAILS BECAUSE THEY ALLEGE NEITHER A MUNICIPAL POLICY OR CUSTOM NOR A FINAL CITY POLICYMAKER ..........................................................11

1. Plaintiffs' Alleged Instances of Anti-Union Friction Do Not Constitute a Municipal Policy, Custom, or Practice under Monell ......................11

2. Chief Dandridge's Disciplinary Authority Is Not Final Policymaking Authority and Cannot Support Monell Liability................................13

C. PLAINTIFFS' PENDENT STATE-LAW CLAIMS FAIL ON MULTIPLE FRONTS..........................................................................15

1. Plaintiffs Fail to Identify Any Rule or Coercive Directive as Required Under Labor Code §§ 1101– 1102 ....................................................15

2. Plaintiffs Admit that the June 20 Presentation Was Not a Disclosure of Working Conditions as Required under Labor Code § 232.5 .........16

3. Plaintiffs' Labor Code § 98.6 Claim Cannot Survive Deficiencies in their Other Labor Code Claims..............................................18

01157.0022 2087978.4

-2-

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

D.  PUNITIVE DAMAGES ARE UNAVAILABLE AGAINST CHIEF DANDRIDGE IN HIS OFFICIAL CAPACITY AND ARE OTHERWISE INSUFFICIENTLY PLEADED ................................... 19

III. CONCLUSION ........................................................................... 20

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

5

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) ............................................................................... 12

6

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 12

8

9

*Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*,
   518 U.S. 668 (1996) ............................................................................... 9

10

11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 12

12

13

*City of St. Louis v. Praprotnik*,
   485 U.S 112 (1988)................................................................................14, 15

14

*Coming Up, Inc. v. City & Cty. of San Francisco*,
   830 F. Supp. 1302 (N.D. Cal. 1993)....................................................... 15

15

16

*Eng v. Cooley*,
   552 F.3d 1062 (9th Cir. 2009)................................................................. 8

17

18

*Erickson v. Pierce County*,
   960 F.2d 801 (9th Cir.1992) .................................................................. 8

19

20

*Gillette v. Delmore*,
   886 F.2d 1194 (9th Cir.1989)................................................................. 9

21

22

*Gillette v. Delmore*,
   979 F.2d 1342 (9th Cir. 1992)................................................................ 13, 14

23

24

*Grinzi v. San Diego Hospice Corp.*,
   120 Cal. App. 4th 72, (2004)..................................................................18, 19

25

26

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ............................................................................... 19

27

28

01157.0022 2087978.4                          -4-

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

*Massey v. Thrifty Payless, Inc.*,
   No. G047734, 2014 WL 2901377, (Cal. Ct. App. June 27, 2014) .......... 17

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ................................................................ 12

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) .................................................................. 8

*Pembaur v. Cincinnati*,
   475 U.S. 469 (1986) ................................................................ 13

*Scott v. Donald*,
   165 U.S. 58 (1897) ................................................................... 19

*Smith v. Wade*,
   461 U.S. 30 (1983) ............................................................ 18, 19

*Soffer v. City of Costa Mesa*,
   798 F.2d 361 (9th Cir. 1986) ................................................. 19

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) .................................................. 12

*United States ex rel. Lupo v. Quality Assurance Services, Inc.*,
   242 F. Supp. 3d 1020 (S.D. Cal. 2017) ................................. 17

**<u>Statutes</u>**

Cal. Labor Code § 98.6 ................................................................ 18

Cal. Labor Code § 232.5 ...................................................... 16, 17

Cal. Labor Code § 1101 ....................................................... 15, 16

Cal. Labor Code § 1102 ............................................................. 16

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

Defendants CITY OF SANTA MARIA, and BRADLEY DANDRIDGE submit this Reply brief in response to Plaintiffs' Opposition to Defendants' Motion to Dismiss the First Amended Complaint ("Opp. Mem.").

## I.   <u>SUMMARY OF ARGUMENT</u>

Far from curing the defects in the First Amended Complaint ("FAC"), Plaintiffs' Opposition confirms the absence of any plausible First Amendment retaliation, *Monell* liability, or viable pendent state law claims against either the City or Fire Chief Dandridge. Stripped of rhetoric, Plaintiffs' theory rests on a purported "wider universe" of generalized, off-duty union advocacy offered to imply improper motive; yet they never cross the essential threshold of linking Plaintiffs' protected speech to the specific disciplinary actions challenged here. Under *Twombly/Iqbal* and the Ninth Circuit's retaliation framework in *Eng v. Cooley*, this missing nexus is fatal.

First, on causation, Plaintiffs' Opposition recites slogans ("pretext," "animus") but offers no operative facts showing that either plaintiff's individual speech was known to Chief Dandridge or the City and actually motivated the actions challenged. The pleading stage demands more than labels or group-level atmosphere: it requires non-conclusory facts supporting an inference that Plaintiffs' own protected conduct "played a part" in the challenged discipline. None are pleaded here. The FAC's defects are especially stark as to Switzer, who is not alleged to have spoken at the only event tied to the disciplinary timeline. Chircop's claim is also deficient, as his suspension flows solely from on-duty conduct at the June 20, 2024 public education event, not from any off-duty advocacy. Without a factual bridge from particular protected speech to the adverse action, Plaintiffs' retaliation claims fail.

Second, Plaintiffs' *Monell* theory also collapses. They neither identify an official municipal policy nor plead a well-settled, widespread practice.

1  Plaintiffs' attempt to inflate a handful of alleged anti-union remarks and
2  two disciplinary decisions into City policy simply re-packages respondeat
3  superior liability, which *Monell* forbids. Nor does the FAC plausibly allege
4  that Fire Chief Dandridge is a final policymaker for the City. The authority
5  to impose discipline within standards set and reviewable by the City
6  Manager is implementation discretion, not policy-setting authority.
7  Moreover, the availability of review by the City Manager further forecloses
8  any claim that the Chief's decisions amounted to municipal policy, and
9  Plaintiff Chircop's decision to forego such review defeats any claim of
10 ratification by a final policymaker.

11      Third, Plaintiffs' pendent Labor Code claims fare no better. Sections
12 1101 and 1102 require, respectively, a municipal "rule, regulation, or
13 policy" restricting political activity and a specific coercive directive
14 designed to force or deter such activity. Plaintiffs identify neither. Alleged
15 hostile rhetoric during a labor dispute is not a City rule, nor do Plaintiffs
16 plead any City-level threat of discharge designed to compel a political
17 course. Section 232.5 likewise fails: Plaintiffs concede the June 20
18 presentation did not disclose "working conditions," and they do not identify
19 any other concrete disclosure by either plaintiff that preceded and
20 motivated the discipline. The section 98.6 claim, derivative of the other
21 Labor Code claims, necessarily falls with them.

22      Finally, Plaintiffs' demand for punitive damages must be dismissed.
23 Punitive damages are unavailable against a municipality and, by the same
24 logic, against an official sued in his official capacity. Even if the claim were
25 recast against Chief Dandridge in a personal capacity, Plaintiffs plead no
26 facts approaching evil motive or reckless/callous indifference to clearly
27 established rights. At most, they allege routine labor-management friction
28 and internal personnel decisions, which cannot sustain a punitive damages.

01157.0022 2087978.4                                    -7-

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

## II.   **LEGAL ARGUMENT**

### A.   **PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR CLAIMS REST ON GENERALIZED UNION ACTIVITY DISCONNECTED FROM THE DISCIPLINE AT ISSUE**

Plaintiffs' attempts to recast arguments in Defendants' Motion to Dismiss badly miss the point. Defendants do not dispute that activities like picketing, canvassing, or speaking at City Council meetings can constitute protected speech in the abstract. But the mere existence of this "wider universe" of speech (Opp. Mem. p. 8) does not relieve Plaintiffs of their burden to plausibly allege that their own individual off-duty speech actually precipitated the specific disciplinary actions challenged in this case.

The Ninth Circuit's retaliation test indeed asks whether a plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). However, mere use of the word "pretextual" or disagreement with the stated basis for discipline are not enough to meet Plaintiffs' burden here. Rather, the law requires plausible allegations that the protected conduct "played a part, 'substantial' or otherwise," in the decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977).

While causation may be shown circumstantially, plaintiffs still must allege facts permitting a reasonable inference that the decisionmaker acted *because of* the plaintiff's own protected conduct. For instance, mere awareness of or hostility to political activities, without facts showing the decisionmaker knew of a plaintiff's individual participation, is insufficient to establish causation. *See Erickson v. Pierce County*, 960 F.2d 801, 805 (9th Cir.1992) (holding that an employer's knowledge of an employee's political activity "simply [did] not support" her claim that the activity was

a substantial or motivating factor in the decision to terminate her"); *Gillette v. Delmore*, 886 F.2d 1194, 1198–99 (9th Cir.1989) (deeming an employee's evidence that employer "knew of his [political] activities" insufficient without some "link between these events and his termination"). Similarly, allegations of temporal proximity between protected conduct and the adverse action cannot substitute for factual allegations linking the two. *Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 685 (1996) (holding that an employee's initial showing on a retaliation claim "require[d] him to prove more than the mere fact that he criticized the Board members before they terminated him").

Here, Plaintiffs attempt to make a meal of meager (and insufficient) scraps in FAC paragraphs. Those scraps consist of describing generalized group advocacy by "members of Local 2020"[1] and examples of Chief Dandridge's alleged "animus" to the union.[2] (FAC ¶¶ 11–13.) But those paragraphs do not allege: (1) what either plaintiff personally said; (2) when they said it; (3) who heard it; or, most important, (4) that Chief Dandridge knew of and acted because of those statements. Plaintiffs cannot evade dismissal by pointing to a vague constellation of off-duty activities while simultaneously failing to plead the required causal connection between those activities and the adverse actions they challenge. *Twombly* and *Iqbal* demand more than rhetoric: they require

---

[1] Critically, while the FAC make generic assertions that Plaintiffs Switzer and Chircop engaged in protected activities, it does not specify which activities either engaged in at any particular time.

[2] Notably, at least one instance of Chief Dandridge's alleged animus on which Plaintiffs rely occurred well after the adverse employment actions on January 9. *See* FAC ¶ 19.

operative facts, and Plaintiffs allege none.

### 1.  *Switzer Alleges No Protected Speech Known to or Relied Upon by Defendants*

Plaintiffs' pretext theories fail as to Switzer because they never identify a concrete protected statement by him, much less one plausibly tied to his termination.

The FAC alleges, in generalized terms, that "members of Local 2020, including Plaintiffs Switzer and Chircop," engaged in protected union advocacy during MOU negotiations, and that such participation was "well known to Defendants." (FAC ¶¶ 11–13.) However, it does not allege what Switzer himself said, when or where he said it, who heard it, or how any decisionmaker learned of or considered such speech in connection with Switzer's termination. Merely identifying categories of activity—such as speaking at City Council meetings, canvassing, or picketing—without attributing any specific act to Switzer does not supply the individualized factual allegations required under *Twombly* and *Iqbal*. Likewise, the assertion that Plaintiffs' advocacy was "well known to Defendants" is a legal conclusion unsupported by any operative facts showing knowledge, timing, or causal relevance.

Most importantly, the FAC fails to plead a factual causal bridge linking any (unidentified) off-duty union advocacy by Switzer and the January 9 termination. The complaint instead anchors the City's actions to the June 20 on-duty presentation to the Democratic Club of Santa Maria and Chief Dandridge's subsequent questioning of Switzer. (FAC ¶¶ 21–24.) Nothing in paragraphs 11 through 13 plausibly alleges that protected speech "played a part" in that initial interview nor in the Chief's subsequent decision to terminate Switzer's probationary employment.

At most, the FAC alleges generalized union advocacy and

organization-level hostility, untethered to any individualized, decision-linked protected speech by Switzer. That is insufficient to state a First Amendment retaliation claim, and dismissal is warranted.

### 2. *Plaintiff Chircop's Claims Collapse Because his Discipline Arose from On-Duty Conduct, Not Off-Duty Advocacy*

Chircop's causation argument fares no better. Plaintiffs insist that the June 20 public-education event was "merely pretextual" and that anti-union animus was the real reason for Chircop's suspension (Opp. Mem. p. 24). But the FAC contains no factual allegation that the June 20 incident was not the real basis for Chircop's suspension, or that Chief Dandridge referenced Chircop's union activities when issuing the January 9 notice of discipline (FAC ¶¶ 21–28). Indeed, plaintiffs' own timeline shows only that Chief Dandridge acted because of the presentation, not in spite of it. (Opp. Mem. pp. 10–11; FAC ¶ 27.)

Instead, Plaintiff Chircop's theory relies solely on generalized examples of workplace friction—precisely the sort of conclusory pretext allegation courts reject under *Twombly* and *Iqbal*. The Opposition cannot salvage causation by invoking months of off-duty union advocacy while simultaneously conceding that the discipline addressed on-duty conduct.

### B. PLAINTIFFS' *MONELL* THEORY FAILS BECAUSE THEY ALLEGE NEITHER A MUNICIPAL POLICY OR CUSTOM NOR A FINAL CITY POLICYMAKER

#### 1. *Plaintiffs' Alleged Instances of Anti-Union Friction Do Not Constitute a Municipal Policy, Custom, or Practice under* Monell

The Opposition seeks to circumvent *Monell v. Department of Social Services* by enlarging Chief Dandridge's alleged anti-union animus to fit a

different theory. In their account, Dandridge's scattered interactions with Local 2020 supply not only the motive for retaliating against two particular employees for ill-defined speech, but also the foundation for an alleged City custom or practice. The theory is implausible on its face and, under *Iqbal* and *Twombly*, cannot survive the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (courts must disregard conclusory allegations and that a complaint must contain sufficient factual matter to state a claim that is plausible on its face); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (complaint must contain "more than labels and conclusions" and must plead facts sufficient to take claims from merely possible to plausible).

Generalized labor-management friction is not a "policy or custom" within the meaning of *Monell*, which limits municipal liability to an official rule or a practice "so permanent and well settled as to constitute a custom with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970). Moreover, sporadic or disconnected incidents do not amount to a widespread practice for purposes of municipal liability under *Monell*. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiffs at most describe a handful of alleged anti-union comments against Local 2020 and certain unnamed members, along with two disciplinary actions stemming from conduct at a single event. Yet plaintiffs identify no comparators, frequency, or department-wide practice showing a well-settled custom of terminations, suspensions, or other adverse employment actions stemming from union activities. Nor does the FAC's bare assertion that the City ratified Chief Dandridge's alleged conduct suffice, as Plaintiffs plead no affirmative or deliberate response to the disciplinary actions. (FAC ¶ 7.) Silence, inaction, or failure to

intervene is insufficient. *See Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) *(*ratification requires a final policymaker's "affirmative or deliberate conduct" in "approv[ing] a policymaker approve a subordinate's decision and the basis for it").

Moreover, Plaintiffs fail to allege any official City policy. Leaving aside the City's political activity policy, with which neither the FAC nor the Opposition takes issue, Plaintiffs identify no ordinance, directive, or rule authorizing retaliation for speech or approving anti-union animus per se. Instead, they rely on the bare assertion that because Chief Dandridge had "authority to implement" disciplinary actions, those actions must represent official municipal policy. (FAC ¶ 33.) *Monell* expressly rejects this respondeat-superior theory. A municipality is liable only for its own policies, not for the discretionary conduct of supervisors who lack final policymaking authority.

### 2.    *Chief Dandridge's Disciplinary Authority Is Not Final Policymaking Authority and Cannot Support* Monell *Liability*

As to final policymaking authority, Plaintiffs rely on state law and City documents to argue that Chief Dandridge has final policymaker status simply because he "may take disciplinary action." (Opp. Mem. pp. 19–21.) In doing so, they conflate authority to impose discipline with authority to set municipal policy—functions the Supreme Court and the Ninth Circuit have repeatedly deemed separate and distinct.

Plaintiffs rely heavily on *Pembaur v. Cincinnati* to argue that a single decision may give rise to municipal liability. But *Pembaur* expressly limits this principle to circumstances where the official possesses "final authority" to establish municipal policy with respect to the action ordered. *Pembaur v. Cincinnati,* 475 U.S. 469, 481–83 (1986). As the Supreme

Court made clear: "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability." *Id.* at 481–82. The Ninth Circuit applied this same limitation in *Gillette v. Delmore*, holding that a fire chief's authority to hire and fire employees did not make him a final policymaker because he was not responsible for establishing the municipality's employment policy. 979 F.2d 1342, 1350 (9th Cir. 1992). Plaintiffs' theory here is indistinguishable. That Chief Dandridge had authority to impose discipline within the Fire Department does not mean he possessed final policymaking authority for the City with respect to employee discipline.

Plaintiffs' citation to section 2-3.05 City's municipal code, which provides that the City Manager may delegate to department heads the ability to appoint, suspend, or remove employees "pursuant to the standards so published," is also unavailing. As the Supreme Court explained in *City of St. Louis v. Praprotnik*, when an official's discretion is constrained by policies established by a superior and subject to oversight, that official is not a final policymaker. 485 U.S. 112, 127 (1988). Section 2-3.05 does exactly that: it authorizes department heads to implement discipline within standards set by the City Manager, not to create policy on the City's behalf. Delegation of implementation authority is not delegation of policymaking authority. *Gillette*, 979 F.2d at 1348.

Finally, Plaintiffs' core factual premise—that Chief Dandridge's disciplinary decision was unreviewable—is contradicted by the very documents they cite. The Final Notice of Suspension expressly advised Plaintiff Chircop that he had "the right of appeal." (RJN Ex. 5.) The fact that Chircop chose not to avail himself of that right does not transform Chief Dandridge's decision into final municipal policy. Under *Praprotnik*,

the relevant inquiry is not whether the plaintiff pursued review, but whether review *was available. See Praprotnik,* 485 U.S. at 127. A subordinate's decision does not constitute final municipal policy where it is subject to review by authorized municipal policymakers. *See Coming Up, Inc. v. City & Cty. of San Francisco*, 830 F. Supp. 1302, 1310–1314 (N.D. Cal. 1993).

Here, Chief Dandridge's disciplinary authority—including decisions to suspend employees—was expressly subject to review by the City Manager, the official vested with final policymaking authority over personnel matters. Moreover, plaintiffs do not allege—because they cannot—that the City Manager affirmatively approved or ratified either the suspension or its alleged unconstitutional basis. Absent such ratification, municipal liability cannot attach as a matter of law. *Praprotnik*, 485 U.S. at 127.

## C.   PLAINTIFFS' PENDENT STATE-LAW CLAIMS FAIL ON MULTIPLE FRONTS

### 1.   *Plaintiffs Fail to Identify Any Rule or Coercive Directive as Required Under Labor Code §§ 1101– 1102*

Plaintiffs' Opposition does not cure the defects in their claims under Labor Code sections 1101 and 1102. Instead, it repackages the same deficient allegations from their section 1983 claim and attempts to stretch isolated statements into a "policy" prohibited by statute. That effort fails as a matter of law.

First, Labor Code § 1101 prohibits an employer from making, adopting, or enforcing a "rule, regulation, or policy" that restricts or controls employees' political activities. Cal. Labor Code § 1101. Plaintiffs concede that Chief Dandridge is not an "employer" for purposes of this

claim, and therefore must allege that any such policy originates from the City.

Despite this requirement, however, plaintiffs do not identify any rule, ordinance, regulation, or official City policy restricting political activity. Instead, they rely on conclusory assertions that Defendants maintained a "policy and practice" against employees speaking out, supported only by allegations that Chief Dandridge warned employees that conduct violating City's political activity policy could result in discipline and has asked promotional candidates "whose side" they are on. (FAC ¶¶ 16, 18.) Such statements allegedly made by a non-employer in the course of a labor dispute do not constitute a City "rule, regulation, or policy" within the meaning of § 1101.

Plaintiffs' Opposition similarly fails to cure deficiencies in their section 1102 claims. Section 1102 requires a specific coercive directive compelling employees to adopt or refrain from a political course. (Cal. Labor Code § 1102.) Once again, Plaintiffs attempt to cast a City employee's alleged hostility toward Local 2020 in general as a specific attack by the City against Plaintiffs specifically. (Opp. Mem. pp. 23–24.) Nevertheless, the Complaint alleges no "threat of discharge or loss of employment" by the City to either Switzer or Chircop in an effort to influence any particular political activity, including the June 20, 2024 presentation. Accordingly, Plaintiffs' section 1102 claim fails as a matter of law.

### 2. Plaintiffs Admit that the June 20 Presentation Was Not a Disclosure of Working Conditions as Required under Labor Code § 232.5

Plaintiffs' Labor Code section 232.5 argument collapses on its own terms. Section 232.5 states in pertinent part that an employer shall not

01157.0022 2087978.4

-16-

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE

"discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." The Opposition not only concedes that Chircop's June 20 public education presentation did *not* involve any disclosure of working conditions (Opp. Mem. p. 24): it also fails to identify any other specific disclosure that plausibly triggered the discipline at issue. Plaintiffs' fallback to general themes of "fair wages," "sub-par compensation," and "staffing" (Opp. Mem. pp. 24–25, citing FAC ¶¶ 11–12) does not cure the defect, because the FAC does not allege when, to whom, or in what manner either Plaintiff disclosed such information, nor does it allege that Defendants were aware of any such disclosure before initiating discipline.

Instead, the FAC merely describes broad, collective union advocacy by "Plaintiffs" and "Local 2020 members"—not individualized disclosures by either Switzer or Chircop—and none of those paragraphs link such speech to the July or January disciplinary actions. Plaintiffs' assertion that "picketing" and "door-to-door canvassing" qualify as disclosing working conditions simply repeats the same conclusory, group-pleaded allegations, without specifying what working-condition information was conveyed, who heard it, or how it precipitated the adverse actions. That omission is fatal: section 232.5 requires a concrete disclosure of working conditions connected to the challenged discipline. Plaintiffs' FAC alleges none.

Nor does Plaintiffs' reliance on *Massey v. Thrifty Payless, Inc.*, No. G047734, 2014 WL 2901377, (Cal. Ct. App. June 27, 2014) and *United States ex rel. Lupo v. Quality Assurance Services, Inc.*, 242 F. Supp. 3d 1020, 1031 (S.D. Cal. 2017) salvage their claims. To start, *Lupo*, contrary to Plaintiffs' assertion, does not hold that the Labor code's definition of working conditions is "intentionally vague" (Opp. Mem. p. 25); rather, it

defines working conditions as "those conditions determined by the employer as a condition of employment." *Lupo*, 242 F. Supp. 3d at 1031. *Massey*, an unpublished decision, observes that "working conditions" include examples such as hours, workplace safety, and benefits. (*Massey*, 2014 WL 2901377, at *5.) Plaintiffs, however, only allege that they advocated for "*public* safety." (FAC ¶ 12.) Such advocacy, while laudable, is not the same as disclosing a condition of employment imposed by the employer, and therefore does not satisfy § 232.5's pleading requirement.

More importantly, neither case eliminates Plaintiffs' obligation to plead a specific disclosure of "working conditions" that preceded and motivated the adverse actions challenged here. Plaintiffs identify none. Their FAC alleges only generalized union advocacy regarding public safety and staffing concerns—not Plaintiffs' own disclosure of employer-imposed working conditions protected by section 232.5. (FAC ¶ 12; Opp. Mem. p. 14.) Absent allegations that the City imposed a condition of employment restricting employees from disclosing such working conditions, Plaintiffs fail to state a claim under section 232.5.

### 3.    *Plaintiffs' Labor Code § 98.6 Claim Cannot Survive Deficiencies in their Other Labor Code Claims*

Plaintiffs' Opposition does little more than state the law governing Labor Code section 98.6. The reason is clear: a claim under section 98.6 cannot stand without a cognizable underlying Labor Code violation. *See* Cal. Labor Code § 98.6(a) ("A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in *any conduct delineated in this chapter*") (emphasis added); *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004) (emphasizing that 98.6 is not a standalone cause of action and requires a

properly alleged predicate Labor Code violation). And as discussed above, each of the other Labor Code claims pleaded in the FAC fails as a matter of law. Accordingly, Plaintiffs' final claim also fails.

### D. PUNITIVE DAMAGES ARE UNAVAILABLE AGAINST CHIEF DANDRIDGE IN HIS OFFICIAL CAPACITY AND ARE OTHERWISE INSUFFICIENTLY PLEADED

While conceding that the City cannot be liable for punitive damages, Plaintiffs redouble their efforts to assert them against Chief Dandridge. To that end, Plaintiffs cite to *Smith v. Wade* and *Scott v. Donald* for the proposition that "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." 461 U.S. 30, 35–36 (1983); 165 U.S. 58, 77–89 (1897). But Plaintiffs' reliance on *Smith* and *Scott* is misplaced. Those cases address the availability of punitive damages against individual defendants sued in their *personal* capacities for constitutional violations. They do not authorize punitive damages against municipal officials sued in their *official* capacities.

As the Supreme Court made clear in *Kentucky v. Graham*, an official-capacity claim "is not a suit against the official but rather is a suit against the official's office," and therefore "is no different from a suit against the municipality itself." 473 U.S. 159, 165–66 (1985). Because municipalities are immune from punitive damages under section 1983, that immunity extends equally to municipal officials sued in their official capacities. *Id.* at 167 n.13 (punitive damages only available "in a suit against an official *personally*") (emphasis added); *see also Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986) (suit against individual public official "unnecessary" following *Monell* "unless they are sued in their personal capacity.")

Plaintiffs do not—and cannot—avoid this rule by citing cases

involving individual-capacity claims. Plaintiffs admit that "at all relevant times" Fire Chief Dandridge "was acting in his official capacity and within the course and scope of his employment" with the City. (FAC ¶ 5.) Therefore, on the face of Plaintiffs' allegations, Chief Dandridge is immune from personal liability for exemplary damages under Section 1983.

Even if Plaintiffs could proceed against Chief Dandridge in his individual capacity, Plaintiffs still fail to allege facts supporting the extraordinary remedy of punitive damages. Such damages require "evil motive or intent" or "reckless or callous indifference" to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiffs' conclusory recitation of this standard (FAC ¶ 35) do not satisfy Rule 8's plausibility standard under *Twombly* and *Iqbal*.

## III.  CONCLUSION

For these reasons, the City and Fire Chief Dandridge request that the Court *grant* the motion to dismiss and *order* that the dismissal be with prejudice.

DATED: February 9, 2026          ALESHIRE & WYNDER, LLP
                                 NORMAN A. DUPONT
                                 CODY S. PARKER
                                 COLIN P. RYAN


                                 By: _____
                                     COLIN P. RYAN
                                     Attorneys for Defendants,
                                     CITY OF SANTA MARIA and
                                     BRADLEY DANDRIDGE

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 11-6.1., I certify that the total word count of this CERTIFICATE OF COMPLIANCE FOR DEFENDANTS CITY OF SANTA MARIA AND CHIEF BRADLEY DANDRIDGE'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(f) AND MOTION TO STRIKE, excluding covers, table of contents, table of authorities, and certificate of compliance, is 4,071.

DATED:  February 9, 2026        ALESHIRE & WYNDER, LLP
                                NORMAN A. DUPONT
                                CODY S. PARKER
                                COLIN P. RYAN


                          By: _____
                                COLIN P. RYAN
                                Attorneys for Defendants CITY OF
                                SANTA MARIA and BRADLEY
                                DANDRIDGE