O

## United States District Court
## Central District of California

| | |
|---|---|
| TRAVIS SWITZER et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CITY OF SANTA MARIA et al.,<br><br>                    Defendant. | Case № 2:25-cv-10716-ODW (AJRx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [19]** |

## I.   INTRODUCTION

Plaintiffs Travis Switzer and Matthew Chircop bring this civil rights action against Defendants City of Santa Maria ("City") and Bradley Dandridge, individually and as the City's Fire Chief.  (First Am. Compl. ("FAC"), Dkt. No. 15.)  Defendants now move to dismiss Plaintiffs' First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b), and to strike Plaintiffs' punitive damages allegations pursuant to Rule 12(f).  (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 19.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Switzer worked as a firefighter for the Santa Maria Fire Department ("Fire Department"), and Chircop worked as a Fire Captain.  (FAC ¶¶ 2–3.)  Switzer and Chircop were both members of Santa Maria Firefighters Local 2020 ("Local 2020"), and Chircop served as its duly elected president.  (*Id.* ¶¶ 3, 11.)

From 2023 through 2024, the City and Local 2020 engaged in contentious negotiations over a successor Memorandum of Understanding ("MOU").  (*Id.* ¶ 11.)  Local 2020 members sought to secure fair wages, working conditions, and adequate staffing at the Fire Department.  (*Id.* ¶ 12.)  To advance Local 2020's position, union members, including Switzer and Chircop, spoke at City Council meetings, canvassed door-to-door, and picketed.  (*Id.* ¶¶ 11–12.)

Dandridge opposed those efforts and displayed animus toward Local 2020.  (*Id.* ¶ 15.)  In February 2024, Dandridge showed Local 2020 members a photograph of an off-duty firefighter holding a sign in front of the City Hall that read "Fair pay for Firefighters."  (*Id.* ¶ 16.)  Dandridge characterized the conduct as political action and used it as a threat of discipline if Local 2020 members continued to demonstrate.  (*Id.*)  In September 2024, Dandridge cornered a firefighter with the intent to convince him to work elsewhere.  (*Id.* ¶ 17.)  Dandridge also interrogated Local 2020 promotional candidates and tried to elicit whether they sided with management or Local 2020.  (*Id.* ¶ 18.)  During a subsequent labor management meeting, Dandridge stated he would not utilize any policy that benefits Local 2020 or its members.  (*Id.* ¶ 19.)

According to Plaintiffs, the City also displayed animus towards Local 2020.  (*Id.* ¶ 20.)  For example, members of the City Council accused Local 2020 and its members of lying.  (*Id.*)  The City Council's relationship with Local 2020 worsened after Local 2020 filed two unfair labor charges with the Public Employment Relations Board.  (*Id.*)

---

[2] All factual references derive from the First Amended Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On June 20, 2024, while on duty as Fire Captain, Chircop led a public education presentation regarding the City's mutual aid and Incident Command System protocols, a standard community outreach topic ("June 20 Presentation"). (*Id.* ¶ 21.) Chircop attended the event with his assigned engine crew, which included Switzer. (*Id.* ¶ 22.) Plaintiffs allege the event was routine, Chircop delivered prior similar presentations, and Switzer "did not utter a single word during the event." (*Id.* ¶¶ 22–23.)

On July 4, 2024, Dandridge summoned Switzer to an "interrogation" regarding the June 20 Presentation. (*Id.* ¶ 24.) Switzer requested Local 2020 representation during the meeting, but Dandridge denied the request. (*Id.*) On January 9, 2025, Dandridge summarily terminated Switzer's employment with the Fire Department. (*Id.* ¶ 25.) Dandridge offered no specific cause or factual basis for the decision, stating only that Switzer had failed to meet the expectations of a firefighter. (*Id.* ¶ 26.)

That same day, Dandridge issued a notice of intent to discipline Chircop by suspending him without pay for two twenty-four-hour shifts. (*Id.* ¶ 27.) The notice cited the City's political activity policy as the reason for Chircop's suspension. (*Id.*) According to Plaintiffs, Dandridge suspended Chircop and terminated Switzer in "direct retaliation for Plaintiffs' actual and perceived political activities." (*Id.* ¶ 28.)

Based on the above, on November 7, 2025, Plaintiffs initiated this civil rights action against Defendants alleging deprivation of their First Amendment rights under 42 U.S.C § 1983 and various supplemental claims under the California Labor Code. (Compl. ¶¶ 31–57, Dkt. No. 4.) Plaintiffs assert individual liability against Dandridge and municipal liability against the City. (*See id.*) Defendants now move to dismiss Plaintiffs' First Amended Complaint in its entirety under Rule 12(b)(6). (Mot.)

### III.      LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading

3

requirements" of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.    DISCUSSION

Defendants argue Plaintiffs' § 1983 claim fails as an "effort to federalize what is merely a state law labor issue," and because Plaintiffs cannot establish municipal liability against the City. (Mot. 9.) Defendants also contend Plaintiffs' supplemental claims fail as pendent claims and on the merits. (*Id.*)

**A.     First Amendment Claim (Count 1)**

Defendants move to dismiss Plaintiffs' § 1983 claim arguing Plaintiffs fail to adequately plead that Defendants retaliated against them based on their protected speech protected and fail to establish municipal liability. (*Id.* at 12–19.)

*1.     First Amendment Retaliation*

Defendants argue Plaintiffs fail to plausibly allege constitutionally protected speech because Switzer did not "speak" at the June 20 Presentation and Chircop spoke only in his official capacity as Fire Captain and not as a private citizen for First Amendment purposes. (*Id.* at 12–15.)   Plaintiffs contend Defendants improperly narrow Plaintiffs' speech to the June 20 Presentation and ignore Plaintiffs' allegations concerning their union advocacy speech. (Opp'n 13–15, Dkt. No. 21.)

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) (citation modified).   But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).   Courts apply a five-step test to assess whether an employer "impermissibly retaliated against an employee for engaging in protected speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).   "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (citation modified).   "Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.*

As an initial matter, the June 20 Presentation itself is not protected speech. Chircop delivered the presentation while on duty as Fire Captain. (FAC ¶ 21.) Such presentations are routine community outreach events and "[n]othing in the presentation was out of the ordinary." (*Id.* ¶ 22.) Thus, Chircop spoke pursuant to his official duties rather than as a private citizen. *See Garcetti*, 547 U.S. at 421 (holding that speech is not protected when it "owes its existence to a public employee's professional responsibilities"). Likewise, Switzer "did not utter a single word" during the June 20 Presentation and "was merely present because he just happened to be the on-duty firefighter" assigned to Chircop. (FAC ¶ 23.) Thus, neither Plaintiff can state a plausible First Amendment claim based solely on the June 20 Presentation.

However, Defendants improperly assume the June 20 Presentation represents the entirety of Plaintiffs' alleged protected speech. To the contrary, Plaintiffs also allege that, during the negotiations between the City and Local 2020 over a successor MOU, Plaintiffs vocally advocated for fair wages, improved working conditions, and adequate staffing by speaking at City Council meetings, canvassing, and picketing. (*Id.* ¶¶ 11–12.) There can be little doubt Plaintiffs' advocacy efforts constitute speech.

Plaintiffs' speech regarding fair wages, inadequate staffing, labor conditions, and their effect on public safety plainly addresses matters of public concern. The Ninth Circuit employs a "liberal construction of what an issue of public concern is under the First Amendment." *Roe v. City & County of San Francisco*, 109 F.3d 578, 586 (9th Cir. 1997) (citation modified). A plaintiff's speech need only "substantially involve" matters of public concern. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019). Where, as here, an employee's speech concerns an issue of "political, social, or other concern to the community, as distinct from a mere personal grievance, it fairly is characterized as addressing a matter of public concern." *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) (citation modified). Thus, Plaintiffs plausibly allege they spoke on matters of public concern during their Local 2020 advocacy efforts.

Plaintiffs also plausibly allege they spoke as private citizens rather than public employees.  "[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."  *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (citation modified).  Unlike during the June 20 Presentation, where Chircop spoke pursuant to his official duties and Switzer attended as the on-duty firefighter, Plaintiffs' speech as Local 2020 members—such as speaking at City Council meetings, canvassing, and picketing—was not part of Plaintiffs' official duties as Fire Department employees. To the contrary, Plaintiffs undertook those activities in their capacities as Local 2020 members advocating for fair wages and adequate staffing.  (FAC ¶¶ 11–12.)

Finally, Defendants do not dispute that Plaintiffs plausibly allege their speech was a substantial or motivating factor in the challenged employment actions.  (*See generally* Mot.); *Robinson*, 566 F.3d at 822.  Thus, the Court finds that, at the pleading stage, Plaintiffs plausibly allege they engaged in protected speech as private citizens on matters of public concern and **DENIES** Defendants' Motion on this basis.

### 2.    Municipal Liability

Defendants argue Plaintiffs fail to plausibly allege municipal liability because they identify only two isolated employment decisions affecting two employees and thus fail to plead an official policy or widespread custom. (Mot. 15–18.)  Defendants also contend Dandridge lacked final policymaking authority because his decision to suspend Chircop was subject to review by the City Manager. (*Id.* at 18–19.)

As a general matter, municipal liability is not available in § 1983 actions under a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1987).  Municipal liability attaches only when the execution of a government's policy or custom inflicts the constitutional injury.  *Id.* at 694.  A plaintiff may establish municipal liability if he can show that (1) a city employee committed a constitutional violation pursuant to an official governmental policy or a longstanding

practice or custom; (2) the city employee who committed the violation had final policymaking authority; or (3) an official with final policymaking authority ratified a subordinate's unconstitutional decision or action. *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citation modified)

Here, Plaintiffs fail to plead sufficient facts to show their § 1983 claim may proceed against the City. They allege Dandridge threatened discipline for picketing, questioned promotional candidates on their union support, intimidated firefighters, refused to use policies that benefited Local 2020 members, and ultimately terminated Switzer and suspended Chircop. (FAC ¶¶ 16–28.) Viewed collectively, and drawing all inferences in Plaintiffs' favor, these allegations support the inference Dandridge had a personal hostility toward Local 2020. They are insufficient to show an official City policy or custom. While Plaintiffs allege a pattern of anti-union animus by Dandridge, (*id.* ¶¶ 16–19, 30), it remains unclear how Dandridge's hostility toward Local 2020 can be attributed to the City. Plaintiffs fail to plead any facts suggesting the City issued a formal ordinance or directive authorizing adverse actions against Local 2020 members or employees who engaged in union speech. (*See generally id.*) Nor do they allege similar actions against other Local 2020 members sufficient to show a custom "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (citation modified). Thus, Plaintiffs fail to plausibly allege municipal liability under an official policy or custom theory.

Defendants next argue Plaintiffs fail to plausibly allege Dandridge had final policymaking authority. (Mot. 18–19.) "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Id.*

On this issue, the parties point to competing sources of authority. Defendants rely on Chircop's Final Notice of Suspension, which informed him of his right to appeal the suspension decision with the City Manager.[3] (Final Suspension Notice 7; Mot. 18–19.) Defendants argue that Dandridge's decision to suspend Chircop was not a decision by a final policymaker because it was subject to City Manager's review. (*Id.*) Plaintiffs rely on California Government Code section 38611, which provides, in relevant part, that the Fire Department is under the control of its Fire Chief. (Opp'n 20.) They also rely on Santa Maria Municipal Code section 2-3.05, which provides that the City Manager "shall delegate to the head of [a] department the ability to appoint, suspend, or remove subordinate employees." (*Id.* at 21.)

Plaintiffs fail to plausibly allege Dandridge had final policymaking authority. An official's ability to exercise a particular function "does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 483. The official must have authority to set final policy for the municipality. *Id.* In deciding whether an official has policymaking authority, courts consider whether the official acted under a policy "not of that official's making and whether the official's decision is subject to review by the municipality's authorized policymakers." *Christie v. Iopa*, 176 F.3d 1231, 1236–37 (9th Cir. 1999) (citation modified). Plaintiffs fail to show Dandridge's decision to suspend Chircop was not a discretionary decision of his making. (*See generally* FAC.) Further, "when a subordinate's discretionary decisions are constrained or subjected to review by authorized policymakers, they, and not the subordinate, have *final* policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Dandridge's decision to suspend Chircop was subject to review by the City Manager. (Final Suspension Notice 7.) As such, the Court cannot

---

[3] Defendants request that the Court take judicial notice of various documents, including Chircop's Final Notice of Suspension. (Req. Judicial Notice ISO Mot. Ex. 5 ("Final Suspension Notice), Dkt. No. 20-5.) The Court incorporates by reference Chircop's Final Notice of Suspension. (FAC ¶ 27; *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (permitting incorporation by reference where a "document forms the basis of the plaintiff's claim"). As the Court resolves the Motion without relying on Defendants' documents, it **DENIES** Defendants' request.

conclude, as a matter of law, that Dandridge had final policymaking authority.  Thus, Plaintiffs fail to plausibly allege municipal liability under this theory.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' § 1983 claim against the City.  As it is possible to allege additional facts to show Dandridge acted pursuant to an official policy when it terminated Switzer and suspended Chircop or possessed final policymaking authority over these employment decisions, dismissal is **WITH LEAVE TO AMEND**.

**B.    Supplemental Claims (Counts 2–4)**

Defendants also move to dismiss Plaintiffs' supplemental claims arising under the California Labor Code.  (Mot. 19–24.)

*1.    California Labor Code §§ 1101, 1102 (Count 1), and § 98.6 (Count 3)*

Defendants argue Plaintiffs' claim against the City under California Labor Code section 1101 fails because Plaintiffs cite no City rule, regulation, or policy that controls or directs the political activities of its employees.  (Mot. 20.)  Defendants also contend Plaintiffs fail to show the City made a "threat" of discharge or loss of employment to Plaintiffs to influence any specific political activity, as required under section 1102.  (*Id.*)   Finally, Defendants argue Plaintiffs' claim under section 98.6 must be dismissed as derivative of their claim under sections 1101 and 1102.  (*Id.*)

Under California Labor Code section 1101, "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy" that forbids or prevents "employees from engaging or participating in politics" or controls or directs "the political activities or affiliations of employees."  Similarly, under section 1102, "[n]o employer shall coerce or influence or attempt to coerce or influence his employees" by a "threat of discharge or loss of employment" to adopt, follow, or refrain from adopting or following" any political action or activity.  An employer is liable under sections 1101 and 1102 only if it fires an employee based on a political motive.  *Couch v. Morgan Stanley & Co.*, 656 F. App'x 841, 843 (9th Cir. 2016).  In addition, employers are prohibited from

terminating, discriminating, or retaliating against an employee who engaged in political activity protected under sections 1101 and 1102. Cal. Lab. Code § 98.6(a).

Here, Plaintiffs allege the City violated section 1101 by adopting or enforcing rules and policies to control and direct Plaintiffs' "perceived political activities and affiliations, including their association with Local 2020 and its advocacy efforts." (FAC ¶ 40.) However, even if Plaintiffs' union-related activity qualifies as "political activity" for purposes of section 1101, Plaintiffs fail to allege a City rule, regulation, or policy forbidding its employees from participating in politics or controlling their political activities. (*See generally id.*) Plaintiffs argue the City's policy "against employees speaking out" is evident through "Dandridge's assertion that members who continued to picket in front of the City would face discipline." (Opp'n 23.) However, this is insufficient to show Dandridge's assertion amounts to a City rule, regulation, or policy that affected Plaintiffs' ability to engage in political activity. *See Brahmana v. Lembo*, No. C-09-00106 RMW, 2010 WL 965296, at *5 (N.D. Cal. Mar. 17, 2010) (requiring a rule, regulation, or policy of discrimination by a defendant employer to establish a violation under section 1101). Thus, Plaintiffs fail to sufficiently state a claim pursuant to section 1101.

Nor do Plaintiffs allege they were coerced by threat of discharge to adopt or refrain from adopting a course of political activity, as required under section 1102. Plaintiffs allege the City violated section 1102 "by coercing and attempting to influence Plaintiffs' political activities through threats of discipline and by taking adverse employment actions," in the form of Switzer's termination and Chircop's suspension. (FAC ¶ 43.) Such bare assertions cannot plausibly state a claim. *See Iqbal*, 556 U.S. at 678 (stating that a complaint fails to state a claim when it tenders naked assertions devoid of further factual enhancement). Thus, Plaintiffs also fail to sufficiently state a claim pursuant to section 1102.

As Plaintiffs' claim under sections 1101 and 1102 is insufficiently alleged, their derivative claim under section 98.6 is also insufficiently alleged. *See Couch*,

2015 WL 4716297, at \*17 (granting summary judgment on the plaintiff's section 98.6 claim as derivative of the unsuccessful claims under sections 1101 and 1102).

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' claims under sections 1101, 1102, and 98.6 (Counts 2–3).  As amendment may cure the deficiencies noted above, dismissal is **WITH LEAVE TO AMEND**.

    *2.    California Labor Code § 232.5 (Count 4)*

Defendants argue Plaintiffs fail to state a claim under section 232.5 because the June 20 Presentation did not involve Defendants' working conditions.  (Mot. 22–24.)

Under section 232.5, an employer may not "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions."  The California Labor Code does not define the term "working conditions."  *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1149 (S.D. Cal. 2018).  Working conditions are generally "determined by the employer as a condition of employment."  *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1031 (S.D. Cal. 2017) (citation modified).  Examples of working conditions may include "attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and even one's required attitude."  *Id.* (citation modified).

Here, Plaintiffs allege they "publicly disclos[ed] information regarding unsafe, unlawful, or otherwise concerning working conditions at Defendant[s'] workplace." (FAC ¶ 51.)  But such "conclusory statements" are not enough to plausibly state a claim.  *Iqbal*, 556 U.S. at 678.  In their opposition brief, Plaintiffs argue that their picketing and door-to-door canvassing activities "do qualify" as working conditions. (Opp'n 25.)  But Plaintiffs do not allege picketing or canvassing were conditions of their employment with the City.  (*See generally* FAC.)  Thus, Plaintiffs have also failed to sufficiently state a claim against the City under section 235.5.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' claim under section 232.5 (Count 4).  As amendment may cure the deficiencies noted above, dismissal is **WITH LEAVE TO AMEND**.

**C.**     **Punitive Damages Demand**

Defendants also move to strike the punitive damages allegations in Plaintiffs' First Amendment Complaint pursuant to Rule 12(f).  (Mot. 24–25.)

Under Rule 12(f), the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The decision on whether to grant a motion to strike is at the court's discretion.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  The Ninth Circuit has cautioned against the use of a motion to strike as "an attempt to have certain portions of [the plaintiff's] complaint dismissed or to obtain summary judgment against [the plaintiff] as to those portions of the suit—actions better suited for a  Rule 12(b)(6)  motion  or  a  Rule 56  motion, not  a  Rule 12(f)  motion." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

Plaintiffs seek punitive damages against Dandridge in his individual capacity. (FAC ¶ 36.)  Defendants request the Court strike this allegation as "unfounded" because Plaintiffs "cannot base [their] claim for punitive damages against a party who is simply not liable under the underlying statute."  (Mot. 24.)  Punitive damages are not available in suits under § 1983 against government entities.  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 785 (2000).  Government officials acting in their official capacities are also immune from punitive damages.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  However, punitive damages are available against a municipal official sued in their individual capacity.  *Smith v. Wade*, 461 U.S. 30, 35 (1983).  Here, as noted above, Plaintiffs do not seek punitive damages against the City or Dandridge in his official capacity as Fire Chief.  (FAC ¶ 36; Mot. 26.)  Instead, they seek punitive damages against Dandridge in his individual capacity, which is permitted under the law.  Thus, Defendants' argument lacks merit.

Accordingly, the Court **DENIES** Defendants' request to strike Plaintiffs' punitive damages allegations against Dandridge in his individual capacity.

## V.      CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.  (Dkt. No. 19.)  Specifically, the Court **GRANTS** the Motion and **DISMISSES** Plaintiffs' § 1983 (Count 1) against the City only and Plaintiffs' supplemental claims under California Labor Code sections 1101 and 1102 (Count 2), section 98.6 (Count 3), and section 232.5 (Count 4) **WITH LEAVE TO AMEND**.  The Court **DENIES** Defendants' Motion in all other respects.

Plaintiffs may amend as specified above to cure the identified deficiencies.  If Plaintiffs choose to amend, they must do so within **twenty-one (21) days** of the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing.  If Plaintiffs choose not to amend, all claims dismissed with leave to amend shall be deemed dismissed with prejudice as of the lapse of the deadline to amend.  In that event, Defendants shall answer within **fourteen (14) days** of the lapsed deadline.

**IT IS SO ORDERED.**

June 17, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

14